JAMES H. LUMUND, PLAINTIFF-APPELLANT, v. BOARD OF ADJUSTMENT OF THE BOROUGH OF RUTHERFORD, AND CLARENCE HARDIN, BUILDING INSPECTOR OF THE BOROUGH OF RUTHERFORD, DEFENDANTS-RESPONDENTS.

Argued April 24, 1950—Decided May 15, 1950.

Mr. *Aaron Heller* argued the cause for the appellant. *Messrs. Heller & Laiks,* attorneys.

Mr. *Oliver T. Somerville* argued the cause for the respondents. *Messrs. Kipp, Ashen & Somerville,* attorneys.

The opinion of the court was delivered by

Burling, J.   This is an appeal from a judgment of the Superior Court, Law Division, affirming the action of the Board of Adjustment of the Borough of Rutherford denying the plaintiff a variance from a zoning ordinance to permit the erection of a motor vehicle service station in a residential district.   The appeal was taken to the Superior Court, Appellate Division, but has been certified for hearing here on our own motion.

The plaintiff owns a plot of vacant land located at the northwesterly corner of State Highway Route No. 17 and Nevins Street.   The plot has a frontage on Route No. 17 of 216 feet and a frontage on Nevins Street of 90 feet and lies within a district restricted to residential use by a zoning ordinance adopted by the Borough on July 16, 1931.   The land was purchased by the plaintiff and one Joseph Lanza on May 2, 1946, for the sum of $1,800.   On February 9, 1949, the plaintiff purchased Lanza's one-half interest therein for the sum of $1,500 and on March 30, 1949, applied to the Borough's Building Inspector for a permit to erect a motor vehicle service station on the land.   The application was denied and an appeal was taken to the Board of Adjustment for a variance from the requirements of the zoning ordinance.   The requested relief was denied and an action in lieu of the former prerogative writ of *certiorari* was then instituted in the Superior Court, Law Division, to review the decision of the Board of Adjustment.   The court affirmed the decision of the Board of Adjustment and dismissed the plaintiff's action.   The present appeal stems from the latter judgment.

The plaintiff contends that a strict application of the ordinance to his land causes an undue hardship within the meaning of *R. S.* 40:55–39 (c) as amended by *L.* 1948, *c.*

305. His proofs consisted of his own testimony to the effect that he had been engaged in the real estate business for 12 years; that his efforts to sell his land for residential purposes had been unavailing and that in his opinion the land in question is not suitable for residential use because of its frontage on Route No. 17 which is a heavily traveled super-highway. His opinion was corroborated by the opinion of another real estate broker. A large number of homeowners and residents in the neighborhood strenuously objected to the granting of the requested variance and stated that they had purchased their properties in reliance upon the zoning ordinance restricting the area to residential use. It is noted that the plaintiff, a realtor, purchased the land approximately 15 years after the adoption of the ordinance and despite testimony on his behalf that efforts to sell the land for two years had been unfruitful, he increased his investment in the land by purchasing Lanza's one-half interest therein on February 9, 1949, less than two months before making his application for a permit to erect a motor vehicle service station. Although the fact that the acquisition of a one-half interest in the land subsequent to the adoption of the ordinance, knowledge of which he is presumed to have possessed, and his recent purchase of the remaining one-half interest after his alleged fruitless efforts to sell the land are not conclusive they are material elements to be considered in determining the existence of unnecessary hardship. In *Aschenbach v. Inhabitants of City of Plainfield,* 121 *N. J. L.* 598 *(Sup. Ct.* 1939) ; affirmed on opinion below, 123 *N. J. L.* 265 *(E. & A.* 1939), the following language was used and appears to be appropriate to the case *sub judice,* 121 *N. J. L.,* at *page* 599 :

"The property was zoned against the use of property as desired by prosecutor when he purchased it and if he did not know it he could easily have ascertained the facts. He quite probably knew of it and purchased with his eyes open, hoping to have an exception made and secured the permit. His failure, therefore, cannot be said to have worked an undue hardship under the circumstances."

The location of the plaintiff's land with respect to surrounding lands and premises is as follows: To the north of plain-

tiff's land, on the westerly side of Route No. 17, for a distance of approximately 734 feet to East Pierrepont Avenue, there is vacant land; a dwelling house is located at the corner of Route No. 17 and East Pierrepont Avenue, facing East Pierrepont Avenue. To the south of plaintiff's land, at a distance of 140 feet from Nevins Street, on the westerly side of Route No. 17 a dwelling house is located; the intervening lands are unoccupied. On the easterly side of Route No. 17, directly opposite the plaintiff's land is a strip of hard vacant land, averaging in depth from 100 feet to 120 feet, running northerly from Nevins Street 520 feet and southerly from said street 440 feet or a total of 960 feet, to the rear of which strip of land is marsh land. Elycroft Parkway is the first street to the west of the plaintiff's land; it is composed entirely of one-family residences. The entire area thus described is within the residential zone as circumscribed by the ordinance. The only exception to a strict use of the area for residential purposes is the existence of a dairy farm on the easterly side of Route No. 17, commencing approximately 520 feet northerly from Nevins Street and running along Route No. 17 in a northerly direction for approximately 1,000 feet. The dairy and its predecessors occupied the said location prior to the adoption of the zoning ordinance. Additionally, it appears that a variance was granted on August 8, 1949, to permit a milk bar on land located on the easterly side of Route No. 17, approximately 170 feet north of plaintiff's land, but that the proposed milk bar has not as yet been erected.

The plaintiff contends that the presence of Route No. 17 has destroyed the residential potentiality of his land and the lands of others fronting on the highway. This argument is predicated upon the thesis that the entire area fronting on Route No. 17 is burdened by the restriction. In *Brandon v. Board of Com'rs. of Town of Montclair,* 124 *N. J. L.* 135 (*Sup. Ct.* 1940); affirmed, 125 *N. J. L.* 367 (*E. & A.* 1940), it was decided that a finding of "unnecessary hardship" to an individual owner, due to "special conditions" is a *sine qua non* to the exercise of the board of adjustment's authority

to grant a variance from the terms of the ordinance, and that if the difficulty is common to other lands in the neighborhood so that the application of the ordinance is general rather than particular, the remedy lies with the local legislative body or in the judicial process to attack the validity of the ordinance itself. That philosophy is in accord with the generally accepted view, 58 *Am. Jur., Zoning*, § 204, *p.* 1051, and was followed by this court in *National House & Farms Ass'n., Inc., v. Board of Adjustment of Borough of Oakland,* 2 *N. J.* 11 (1949), and *Ramsbotham v. Board of Public Works of City of Paterson,* 2 *N. J.* 131 (1949). It is applicable to the instant case. The doctrine of *Brandon v. Board of Com'rs. of Town of Montclair, supra,* to the effect that it is not *per se* a sufficient reason for a variation that a nonconforming use will be more profitable to the particular landowner was also subscribed to by this court in *Berdan v. City of Paterson,* 1 *N. J.* 199 (1948) and *Ramsbotham v. Board of Public Works of City of Paterson, supra.* That doctrine is equally applicable to the present case. Because of the fact that the plaintiff's property is located on a corner it is urged that it is "even more unsuitable for residential purposes than any of the other adjacent lots along the highway." It would appear, however, that the plaintiff's lot is affected to a less degree by the presence of Route No. 17 than are some of the other lots fronting on said highway because there may be a possibility of plaintiff's erection of a residential property fronting on Nevins Street.

The plaintiff further contends that *R. S.* 40:55–39 as amended by *L.* 1948, *c.* 305, in force when the board of adjustment made its determination, obviates the necessity of showing that his land is uniquely affected, as prescribed in *Brandon v. Board of Com'rs. of Town of Montclair, supra,* and reasserted by this court in *National House & Farms Ass'n., Inc., v. Board of Adjustment of Borough of Oakland, supra,* and *Ramsbotham v. Board of Public Works of City of Paterson, supra.* Our reading of *R. S.* 40:55–39(c) as amended by *L.* 1948, *c.* 305, leads us to the conclusion that the authority

of the Board of Adjustment is in some respects more restricted by the amendment than it was prior thereto. That statute, as amended in 1948, provided that the Board may grant a variance where, by reason of the "extraordinary and exceptional situation or condition" of the property, a strict application of the zoning regulations would result "in peculiar and exceptional practical ·difficulties to, or exceptional and undue hardship upon, the owner of such property" * * * "provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance." Thus the statute as so amended does not obviate the showing that the plaintiff's land is uniquely affected but places an additional limitation upon the Board's authority to grant a variance, to wit, that it "may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance." Such a construction of the statute, as amended, appears to be proper when consideration is given to the historical background and growth of the zoning concept.

The general idea of that which we today know as "zoning" existed with the Romans and as early as 1692 in this country. See *McQuillen, Municipal Corporations (2d Ed.), Vol. 3*, footnotes on *p.* 404, but its general acceptance and rapid progress was delayed until the present century. Zoning laws are designed to regulate, systematize and stabilize the growth of municipalities and while they occupy a prominent place in municipal thought today, they were not always favorably regarded. The courts of this State were reluctant to recognize zoning insofar as it sought to divide a municipality into districts for various uses, such as residential, mercantile and industrial. Such use zoning was considered to be an unreasonable exercise of the police power. See *State ex rel. Ignaciunas v. Town of Nutley, 99 N. J. L. 389 (E. & A. 1924).* That attitude continued in our judicial opinions for several years until October 18, 1927, when an amendment was made to the Constitution which provided as follows:

"5. The Legislature may enact general laws under which municipalities, other than counties, may adopt zoning ordinances limiting and restricting to specified districts and regulating therein, buildings and structures, according to their construction, and the nature and extent of their use, and the exercise of such authority shall be deemed to be within the police power of the State. Such laws shall be subject to repeal or alteration by the Legislature." *Art. IV, Sec. VI, par. 5, Const.* 1844.

Pursuant thereto the legislature enacted *R. S.* 40:55–30 *et seq.* (*L.* 1928, *c.* 274), permitting municipalities, by ordinance, to regulate the nature and extent of use of buildings and structures within specifically restricted districts. Art. IV, Sec. VI, par. 2 of the 1947 Constitution, effective January 1, 1948, contains a provision similar to the above cited amendment but extends the zoning authority to include the regulation of "the nature and extent of the uses of land." *R. S.* 40:55–30 *et seq.* was amended by *L.* 1948, *c.* 305, *inter alia* for the purpose of extending the zoning authority to cover the use of land pursuant to the 1947 Constitution. More recent pronouncements of our courts reflect the increasing consciousness of the importance of zoning regulations which stabilize the values of properties by restricting them to specified districts, with resulting advantages to the particular districts and the general welfare of the entire region. See *Berdan v. City of Paterson, supra; Duffcon Concrete Products v. Borough of Cresskill,* 1 *N. J.* 509 (1949) ; *Collins v. Board of Adjustment of Margate City,* 3 *N. J.* 200 (1949). The spirit of the zoning act has been to restrict rather than to increase nonconforming uses, and authority to vary the application of the general regulation should be sparingly exercised. *Sitgreaves v. Board of Adjustment of Nutley,* 136 *N. J. L.* 21 (*Sup. Ct.* 1947). The zoning act does not contemplate variations which would frustrate the general regulations and impair the overall scheme which is set up for the general welfare of the several districts and the entire community. This philosophy has become increasingly prevalent since 1927 and is fortified by the language of the 1948 amendment to the zoning act. It is further strengthened by an amendment to the zoning act in 1949. See *L.* 1949, *c.* 242.

The plaintiff urges that the facts of the instant case are somewhat analogous to other cases in which applications for a variance to permit a motor vehicle service station in a residential zone were granted. The facts in the cases cited by him are patently different from the facts of this case. In *Lehrer v. Board of Adjustment of City of Newark*, 137 *N. J. L.* 100 (*Sup. Ct.* 1948), the location was in a neighborhood of industrial and mercantile establishments. In *Bianchi v. Morey*, 128 *N. J. L.* 219 (*Sup. Ct.* 1942), the location was adjacent to a lumber yard and in close proximity to another service station. In *Tulsa Oil Co. v. Morey*, 137 *N. J. L.* 388 (*Sup. Ct.* 1948), the same location was involved as in the *Bianchi case.* In *Gabrielson v. Borough of Glen Ridge*, 13 *N. J. Misc.* 142, a mercantile neighborhood was involved. In *Jersey Triangle Corp. v. Board of Adjustment of Jersey City*, 127 *N. J. L.* 194 (*Sup. Ct.* 1941), the court said that the location involved was "surrounded in all four directions by business properties." The facts of those cases are not comparable to the instant situation.

The power of a board of adjustment to ameliorate the rigors of the application of the general regulation does not extend to a situation, as here presented, which is common to other lands in the neighborhood. The conversion of a residential district into a mercantile district is a legislative function reserved for the local legislative body. *Bassett, Zoning* (1940), *p.* 125.

The law indulges the presumption that a zoning ordinance is altogether reasonable in its application; and there rests upon the individual landowner the *onus* of establishing circumstances justifying a variance from the general rule of the ordinance. *Brandon v. Board of Com'rs. of Town of Montclair, supra.*

As a jurisdictional prerequisite to alleviating action by the board of adjustment there must be proven unnecessary hardship to the individual landowner. *National House & Farms Ass'n., Inc., v. Board of Adjustment of Borough of Oakland, supra.*

The plaintiff has not presented the jurisdictional prerequisites to the granting of a variance by the board of adjustment and therefore his application was properly denied.

■ Finally, the plaintiff attacks the constitutionality of the ordinance on the premise that it makes no provision for motor vehicle service stations to be located anywhere in the Borough. We find no merit in this contention. Section 8A-1 of the zoning ordinance provides as follows:

"Section 8. Business No. 1 Districts:
No use permitted in a Residence District shall be excluded from a Business No. 1 District.
A. There shall be permitted any one or more of the following specified uses:
1. Any retail store or stand where goods are sold or services rendered and where nothing is manufactured, converted or altered except for such retail trade."

We conceive that the foregoing language is broad enough to embrace motor vehicle service stations. Furthermore, it appears that actually there are a number of such service stations in the permitted district in the Borough and that the above section of the ordinance has been interpreted by the borough officials to include such service stations.

The judgment appealed from is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD and BURLING—6.

*For reversal*—None.