29 N.J. Super. 164 (1953)
102 A.2d 73
FANNIE D. HERMAN, PLAINTIFF-APPELLANT,
v.
BOARD OF ADJUSTMENT OF THE TOWNSHIP OF PARSIPPANY-TROY HILLS, MORRIS COUNTY, NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1953.
Decided December 29, 1953.
*166 Before Judges JAYNE, FRANCIS and SMALLEY.
Mr. Samuel A. Larner argued the cause for appellant (Messrs. Budd and Larner, attorneys).
Mr. Eugene F. Hillery argued the cause for respondent.
The opinion of the court was delivered by JAYNE, S.J.A.D.
The authority to vary the application of general zoning regulations and restrictions should be very moderately exercised. Sitgreaves v. Board of Adjustment of Nutley, 136 N.J.L. 21, 26 (Sup. Ct. 1947); Lumund v. Bd. of Adjustment of Borough of Rutherford, 4 N.J. 577, 585 (1950); Brandt v. Zoning Bd. of Adjustment, Mt. Holly Tp., 16 N.J. Super. 113 (App. Div. 1951). The board of adjustment exercises quasi-judicial functions which are in their essence discretionary and guided by the principle and policy of the applicable statutes and ordinances. Potts v. Board of Adjustment of Princeton, 133 N.J.L. 230, 238 *167 (Sup. Ct. 1945); Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64, 76 (1952); Ward v. Scott, 11 N.J. 117, 121 (1952). A landowner seeking a variance from the terms of a zoning ordinance on the ground of an exceptional and undue hardship has the burden of establishing the existence of the alleged unjust situation. Home Builders Ass'n of Northern N.J. v. Paramus Bor., 7 N.J. 335 (1951). The board's denial of a variance is presumptively correct and proper and the party impugning the determination on appellate review encounters the burden of proving to the contrary. Rexon v. Bd. of Adjustment, Haddonfield, 10 N.J. 1 (1952). The appellate inquiry is whether the board acted reasonably upon the evidence presented to it, and its decision will be sustained in the absence of an affirmative disclosure that it was unreasonable, arbitrary or capricious. Marrocco v. Bd. of Adjustment of City of Passaic, 5 N.J. Super. 94 (App. Div. 1949), certif. denied 3 N.J. 379 (1949); Rexon v. Bd. of Adjustment, Haddonfield, supra. In the present case the Law Division resolved that the action of the Board of adjustment of the Township of Parsippany-Troy Hills, Morris County, in denying the plaintiff's application for a variance was reasonable in the circumstances disclosed by the evidence. From that judgment the plaintiff appeals.
The factual structure upon which the determination of the board and the accordant decision of the Law Division were placed can be revealed by an epitome of the significant events marshaled in a chronological sequence.
A map displaying the lots, blocks, streets and roads, with their measurements and identifying designations, of the tract of land of Lake Intervale Corporation was approved by the township committee on June 9, 1941 and filed on July 11, 1941 in the office of the county clerk. The particular lot with which we are concerned in the present litigation, having the unpropitious number 13, is delineated on the map as having a frontage of 51.66 feet and a depth of 129.15 feet.
Zoning first received official treatment in the township in 1945 and by an amendment adopted in 1948 lots within the *168 municipality which had been theretofore plotted on maps duly filed, as had that of the Lake Intervale Corporation, having not less than a frontage of 50 feet and an area of 7,500 square feet were excluded from the general restrictive provisions of the zoning ordinance. It may be noticed that lot No. 13 did not embrace an area of 7,500 square feet.
At a mortgage foreclosure sale in November 1949 the Reid Development Corporation submitted to the sheriff a bid to acquire 332 of the lots including lot No. 13. The conveyance was not consummated until February 1950 and the deed appears to have been recorded March 10, 1950. In January 1950, intermediate the sheriff's sale and the date of its consummation, an amendment of the zoning ordinance was introduced which by its terms would forbid the construction of a dwelling house on any lot with a frontage and area such as those of lot No. 13 in the Class A residential zone in which among numerous others lot No. 13 was situate. Something caused procrastination, for although the proposed amendment was approved on its first reading in February 1950, it was not ultimately adopted on final reading until October 3, 1950.
Again a significant occurrence intervened. On May 2, 1950 Reid Development Corporation, of which corporate entity Mr. Abraham M. Herman, an attorney and counsellor-at-law, is secretary, treasurer, and owner of, he says, "close to 50 percent" of the capital stock, conveyed by an instrument so dated to the plaintiff, Fannie D. Herman, the wife of Abraham M. Herman, 90 of the vacant lots, including No. 13. This deed was not promptly recorded but it arrived at the county clerk's office for recording on September 27, 1950 which, quite fortuitously or not, happened to be six days before the final passage of the amendment of the zoning ordinance.
The deed has some interesting and engaging aspects. It bears United States documentary stamps of 55 cents. It purports to convey to the grantee a conspicuously inordinate number of the 90 lots, of which each lot of a frontage of 51 feet is interwoven alternately on the map between a lot *169 owned by the Reid Development Corporation. Yes, the conveyance has the apparent characteristics of an odd and uncommon bargain.
But let us continue the narrative. In the following month of June the 1950 amendment to the zoning ordinance was annulled by the Superior Court because its passage had not had the previous approval of the municipal planning board. The municipality was evidently disinclined to abandon its undertaking to encircle the territory within its zoning supervision and on July 22, 1952 the municipal governing body lawfully re-enacted the amendment, the pertinent paragraph of which reads:
"2. AREA OF LOT REQUIRED. No dwelling house shall be constructed on a lot where the area is less than 15,000 square feet with a minimum frontage of 100 feet, provided, however, that where a map has been platted and approved by the Township Committee of the Township of Parsippany-Troy Hills, in the County of Morris, and/or its Planning Board and said platted map has been filed in the office of the County Clerk of the County of Morris before the time of the passage of this ordinance, as amended, and the said map contains lots having less than 15,000 square feet in area, then any lot in the area covered by said map may be occupied by a single family dwelling house and the accessory buildings permitted under this ordinance if said lot has a minimum frontage of 100 feet and a minimum depth equal to the minimum depth shown on said map for any lot within the whole area covered by the particular lot thus to be occupied by a single family dwelling."
Manifestly this amendment prohibited the erection of a dwelling house on lot No. 13 because of the deficiencies in the measurements of its frontage and area. The amended ordinance does contain the following tolerance:
"In any Class `A' Residential Zone in case a bona fide owner, whose title was acquired prior to the adoption of the relevant section of this Ordinance, owns a parcel of land which shall have a depth of less than 150 feet, with frontage on a road shown on the Zoning Map, the following principles among others shall be applied in the granting of variances or the recommendations of exceptions from or to the minimum size of lots required in this zone:
a. Where the frontage is 75 feet or less, one building lot shall be approved."
(Italics supplied.)
*170 On June 5, 1951 Judge Colie rendered his opinion in Rodee v. Lee, 14 N.J. Super. 188 (Law Div. 1951), which was an action in lieu of prerogative writ to compel the township building inspector to issue building permits to an owner of some of these lots. The judgment commanded the issuance of the desired permits for those individual lots in the Class A residential zone which lacked the frontage and area required by the zoning ordinance and which were, like lot No. 13, isolated in ownership. That decision doubtless supplied the directional footprint for the course pursued by the present plaintiff. She applied through the representation of her husband to the board of adjustment for a variance relative to the use of lot No. 13, likewise asserting an exceptional and undue hardship.
Proof of the exceptional and undue hardship to the individual landowner is a jurisdictional prerequisite to the alleviating action of the board of adjustment. Nat. House & Farms Ass'n., Inc. v. Bd. Adjustment, Oakland, 2 N.J. 11 (1949); Ramsbotham v. Bd. of Public Works, Paterson, 2 N.J. 131 (1949). Even so, the Legislature has declared that the relief afforded by a variance shall not be granted by the board of adjustment where its allowance would be substantially detrimental to the public good and materially impair the intent and purpose of the zone plan and zoning ordinance. R.S. 40:55-39 as now amended.
It is important to discern the basic causes of the alleged exceptional and undue hardship in the present case. They are the lack of the requisite frontage of the lot and the absence of its contiguity with other land owned by the plaintiff. Was the isolation of the lot in the strange circumstances of the present case premeditated and shrewdly contrived to circumvent the anticipated zoning regulations? Assuredly that is a question of fact. A reading of the scales of the credibility of the evidence and of the logical inferences to be deduced therefrom was the primary duty of the members of the board of adjustment.
Mr. Herman is trained in the law. He is not certain or "sure" that he was aware of the introduction of the proposed *171 amendment to the zoning ordinance in January 1950. However, on May 2, 1950 his company executed a deed conveying the separate 90 lots to his wife for an evident consideration of $500. Mr. Herman was unable to state whether his knowledge of the consideration of the proposed ordinance by the municipal governing body "was the reason [he] recorded the deed" six days before the final passage of the local law. Mrs. Herman was not disposed to impart any information in her own behalf concerning the consideration, if any, for the conveyance, her foreknowledge of the proposed ordinance, and the separate and isolated locations of such a number of lots of the 51 feet frontage. The explanation of the unusual selection of the lots given by Mr. Herman has a rhapsodical sound.
In the light of the proofs and the prior determinations, we infer that it was resolved that the isolation of the lot, like so many others in the conveyance, was adroitly purposeful in an anticipated effort to avoid the restrictions of the expected ordinance and that accordingly the voluntary and premeditated isolation was neither an exceptional nor an undue hardship to the plaintiff within the import and meaning of the statute defining the power of the boards of adjustment in the allowance of variances.
Additionally, it was doubtless foreseen that the allowance of variances to the plaintiff to be attached to upward of 90 lots for the same cause would substantially maim, if not effectively devitalize, the observance of the zoning scheme throughout the territory of this development at Lake Intervale. Leimann v. Board of Adjustment, Cranford Tp., 9 N.J. 336, 340 (1952). If a lot of the plaintiff is isolated, so likewise is the contiguous lot of the Reid Development Corporation. The law accepts as its pattern of justice the ethical good faith of the persons whose conduct it assumes to regulate. In estimating the good faith of individuals it is not unwise to consider what precedes and what follows their course of conduct.
The supplementary reasons for reversal, such as the vested immunity of the lots delineated on the filed map *172 from use regulations by reason of their recorded frontage or area and the estoppel said to arise from the previous granting of some variances, are not meritorious. Vide, Scaduto v. Bloomfield, 127 N.J.L. 1 (Sup. Ct. 1941); Birkfield Realty Co. v. Bd. Com'rs. of Orange, 12 N.J. Super. 192 (App. Div. 1951), certif. denied, 8 N.J. 319 (1951).
The judgment under review is affirmed.