JOSEPH J. ARDOLINO AND CARMELLA ARDOLINO, HIS WIFE, PLAINTIFFS-APPELLANTS, v. BOARD OF ADJUSTMENT OF THE BOROUGH OF FLORHAM PARK, MORRIS COUNTY, NEW JERSEY, AND ALBERT P. COUVRETTE, BUILDING INSPECTOR AND ZONING OFFICER OF THE BOROUGH OF FLORHAM PARK, MORRIS COUNTY, NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued March 18, 1957—Decided April 8, 1957.

Mr. *John B. Applegate* argued the cause for the appellants (*Besson & Applegate,* attorneys).

Mr. *Elden Mills* argued the cause for the respondents (*Mills & Mills,* attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J. The plaintiffs have appealed to this court as of right pursuant to *R. R.* 1:2–1(*b*) from the final judgment of the Appellate Division of the Superior Court affirming, but with a dissent, the judgment of the Law Division upholding the refusal of the Board of Adjustment of the Borough of Florham Park to permit a departure from the literal requirements of the borough zoning ordinance; see 41 *N. J. Super.* 582 (*App. Div.* 1956).

The property pertinent to the issue before us lies on the westerly side of Lakeview Avenue in Florham Park, Morris County. As originally laid out on the subdivision map of Brooklake Park, filed April 11, 1923, lots 366A and 366B each had a frontage of 50 feet and lot 365A had a frontage of 76.83 feet. The lots are numbered from north to south so that lot 365A adjoins lot 366B on the north and lot 366A adjoins lot 366B on the south.

In 1948 at a time when the zoning ordinance permitted the building of residences on lots with a frontage of only 50 feet, the plaintiffs acquired all of lot 365A with the exception of a strip 13 feet wide along the boundary line of lot 366B and built a house on what was believed to be their 63.83 feet of the lot. Six years later it was discovered that through a surveyor's error, for which the plaintiffs were in nowise responsible, most of that house was erected on lot 366B and on the 13-foot strip of lot 365A, neither of which they owned, and only a very small part was erected on the part of lot 365A that they did own. On August 9, 1954 the plaintiffs acquired lot 366B and the 13-foot strip of 365A, giving them a total continuous frontage on Lakeview Avenue of 126.83 feet.

On August 3, 1954, shortly before this last purchase by the plaintiffs, the Borough of Florham Park adopted a zoning ordinance restricting residential building in this area to lots with a frontage of at least 100 feet and a minimum area of 15,000 square feet. At the time of the adoption of this ordinance and for a period of time before, the most southerly of the three lots mentioned, namely, lot 366A, was owned by Thompson Associates, Inc. We can gather from the record that Thompson Associates, Inc., owned other lots in the area, but on the date of the ordinance creating the new minimum requirements this company did not own any of the property adjoining lot 366A on either side that could be added to the 50 feet of lot 366A to make it a lot which would conform with the new ordinance.

On August 25, 1954, on the application of the plaintiffs, the board of adjustment of the borough granted them a variance permitting the construction of a house on the northerly 50 feet of lot 365A and a house was thereafter built.

Then on September 27, 1954 the plaintiffs purchased lot 366A from Thompson Associates, Inc. It was conceded on oral argument that they did not acquire it at a distress price but paid fair value for it.

On October 18, 1954 the plaintiffs applied to the planning board of the borough for approval of a realignment of the two lines separating the three lots, reducing lot 365A from 76.83 feet to 50 feet, increasing lot 366B from 50 feet to 64.83 feet, and increasing lot 366A from 50 feet to 62 feet. The realignment was approved by that board after a hearing, but with the proviso that "no building permit be issued for lot 366A without further referral to the planning board." This condition was apparently imposed because of an easement held by the borough for a drainage ditch running over lot 366A granted by Thompson Associates, Inc., to the Borough of Florham Park by deed of February 17, 1950 in the following terms:

"* * * to maintain the present stream, brook or ditch now crossing said plots for the disposal of surface waters, and the said

party of second part shall have the right to clean and clear said stream, install pipes in the bed thereof and cover same and—said party of the second part [that is the borough] shall have the right to go in and upon the premises forever for the purpose of repairing, replacing or relaying any pipes installed. The course of said stream is more particularly described in a survey thereof made by John P. Sliwa, Civil Engineer."

No survey as referred to in the deed was ever located, but there was a drainage ditch that crossed this lot almost diagonally in a natural course.

The effect of the realignment of the lot lines was to bring the house constructed in 1948 and the house that was being constructed pursuant to the variance granted on August 25, 1954 within the boundaries of separate lots (365A and 366B).

Then, on November 1, 1954, after the approval of the realignment of the lot lines by the planning board, the plaintiffs sold lot 366B, as realigned, with the house on it. Thus lot 366A, an undersized lot under the new zoning requirements of 62 feet frontage, was again isolated as it had been when Thompson Associates, Inc., owned it, only now, it was 12 feet wider.

Some months later, in May 1955, the plaintiffs applied to the planning board for approval of a plan with respect to lot 366A showing a proposed change solely within the lot lines of the course of the drainage ditch and the position of a house they proposed to build. The planning board approval was sought pursuant to the proviso imposed by it upon further use of this lot at the time it approved the realignment of lot lines on October 18, 1954. The planning board, at their May 23, 1955 meeting, "stated it would review Mr. Ardolino's request after he * * * asked the Borough Engineer and Secretary of the Board of Health to inspect his property and submit a report to the Planning Board." The record with respect to the planning board stops here, but it appears that the course of the drainage ditch was relocated within the lot lines of 366A. Whether this was done with the consent of the planning board or others does not appear, but it was conceded at the oral argument that the borough was aware that the plaintiffs had in fact altered

the course of the ditch preparatory to building a house but did nothing.

On September 12, 1955 the plaintiffs made application to the building inspector of the borough for a permit to build a house on 62-foot lot 366A and submitted a lot plan showing the drainage ditch in its relocated position. The permit was denied solely on the ground that the width of the lot did not comply with the 100-foot requirement of the new zoning ordinance. The plaintiffs then appealed to the board of adjustment, asking either for a reversal of the action of the building inspector, asserting that the lot constituted a prior nonconforming use, or for the grant of a "hardship" variance under *N. J. S. A.* 40:55–39(*c*).

The board of adjustment denied the application for seven assigned reasons. They said:

"1. Appellants purchased said property with knowledge that the said lot did not comply with the Zoning Ordinance of the Borough of Florham Park.

2. That the appellants were familiar with the conditions of said property and the existing drainage brook thereon and had previously been informed by the Board of Adjustment and the Planning Board at prior hearings that it may not be advisable to build upon said lot.

3. That the appellants contributed to their own predicament by building a dwelling partly on property owned by them and partly on property owned by another which property was subsequently purchased by the appellant and exception granted by this Board so that said premises could be sold.

4. That appellants without a building permit commenced the construction of a foundation and footings upon said premises.

5. That the appellants altered the course of said brook contrary to the rights of the Borough of Florham Park.

6. That the change of the course of said brook has caused said premises to be burdened with water not otherwise upon said premises and adjoining property.

7. That the erection of a dwelling on said premises will not conserve the value of the property or promote the health and welfare of the Borough of Florham Park for the reasons above stated. * * *"

The plaintiffs then instituted the present action in lieu of prerogative writ to compel the issuance of the building permit and to review the denial of the variance by the board of adjustment. The Law Division sustained the action

of the board, limiting its consideration to the first reason given by the board and holding that none of the circumstances here were sufficient to indicate any unreasonableness in the board's action requiring reversal. The Appellate Division affirmed, holding that the plaintiffs were not entitled to a building permit on the ground of a nonconforming use and that since the hardship now claimed by the plaintiffs was not created by the new zoning ordinance but was created by the plaintiffs themselves, through purchasing the lot in question with knowledge of the existing conditions and their selling the adjoining lot, it afforded no basis for a variance and the action of the board was therefore not arbitrary; see 41 *N. J. Super.* 582, 591. The dissent in the Appellate Division, *id.*, took the view that under the cases heretofore decided in this State in similar circumstances lot 366A was "incontestably entitled to a variance in the hands of its prior owner," namely, Thompson Associates, Inc., and that this right to a variance in that owner carried the "incidental right that [its] alienee should ordinarily be entitled to the same variance," citing *De Moss v. Borough of Watchung,* 137 *N. J. L.* 503 (*Sup. Ct.* 1948), and *Rodee v. Lee,* 14 *N. J. Super.* 188 (*Law Div.* 1951).

The plaintiffs here contend that the refusal of the board of adjustment was improper because it was arbitrary and unreasonable in the circumstances. They also urge that lot 366A was a "nonconforming lot" subject to section 10.1 of the Florham Park zoning ordinance which provided, consistent with *R. S.* 40:55–48, that "the local use of any building or land existing at the time of the enactment of the original ordinance or at the time of any of the amendments changing the zones or uses may be continued although such use does not conform to the provisions of this ordinance" and it was therefore excepted from the operation of the new ordinance. They also urge that the right to use this "nonconforming lot" passed to them as subsequent grantees of the owner at the time the ordinance increased the requirements. They also urge an estoppel to deny them the use of this lot, the denial of equal protection and deprivation

of due process and that the planning board lacked the power to impose any condition on the future use of lot 366A.

The respondents, on the other hand, assert that the action of the board was in all respects reasonable and proper, that the lot in question did not qualify for exemption from the provisions of the new ordinance as a nonconforming use, that the circumstances, self-created by the plaintiffs, furnished no basis for any variance and that the application for a building permit or for a variance was, in the circumstances of this case, premature since the planning board had not passed upon the relocation of the drainage ditch pursuant to the proviso attached to the realignment approval.

 While the more recent legislation in the zoning and planning field looks forward to an ideal relationship between the zoning requirements and the subdivision of land into lots or parcels, *N. J. S. A.* 40:55–1.15, the mere delineation of lots on a map filed after approval by a municipality carries with it no guaranty that each lot or parcel will be sufficient in itself to be built upon when the time comes to do so, *Herman v. Board of Adjustment, Parsippany-Troy Hills Tp.,* 29 *N. J. Super.* 164, 171, 172 (*App. Div.* 1953), *Rodee v. Lee,* 14 *N. J. Super.* 188 (*Law Div.* 1951), *supra.* And this is particularly so when lots do not conform to the zoning requirements in effect at the time of their delineation. On the contrary, the use of land is subordinate to a valid exercise by a municipality of its power to zone and control land use within its boundaries, *Collins v. Board of Adjustment of Margate City,* 3 *N. J.* 200, 205, 206 (1949), *Bassett, Zoning* (1940), 108, 178, including the power to make reasonable changes in such regulations consistent with public good, *Greenway Homes v. Borough of River Edge,* 137 *N. J. L.* 453 (*Sup. Ct.* 1948), 8 *McQuillan, Municipal Corporations* (3d ed.), *sec.* 25.133. In the *Collins* case, *supra,* Mr. Justice Heher, speaking for an unanimous court stated:

"* * * All property is held in subordination to the police power; and the correlative restrictions upon individual rights— either of person or of property—are incidents of the social order,

deemed a negligible loss compared with the resultant advantages to the community as a whole, if not, indeed, fully recompensed by the common benefits." 3 *N. J.* 206.

Here, the plaintiffs took no action and incurred no liability with respect to the actual use of lot 366A until after the passage of the new zoning ordinance upgrading the requirements for building lots and, consequently, can claim no reliance on the pre-existing state of affairs. The most they can claim is a specific right to continue a nonconforming use, either under section 10.1 of the new Florham Park ordinance or under *R. S.* 40:55–48 granting such right, and the general right not to have the existing restrictions changed in any unreasonable manner or contrary to the public interest; see 8 *McQuillan, Municipal Corporations, supra, p.* 231. But the lot in issue had not been put to any definite use by the time the new ordinance here was adopted in August 1954, and it is the law beyond any question that it is the use in fact existing on the land at the time of the adoption of a new zoning ordinance, and that alone, that may be continued contrary to any new regulations, *R. S.* 40:55–48; *Slruyk v. Samuel Braen's Sons,* 17 *N. J. Super.* 1 (*App. Div.* 1951), affirmed o. b. 9 *N. J.* 294 (1952); *Martin v. Cestone,* 33 *N. J. Super.* 267 (*App. Div.* 1954). In the *Martin* case the court made especial point of declaring:

"\* \* \* it is an existing *use occupying* the land, that the statute protects; the statute does not deal in mere intentions [citing cases]."

Lot 366A was vacant land at time of the adoption of the new ordinance and therefore could not qualify for any exemption from the provisions of the ordinance on a nonconforming use ground. Moreover, there is no claim here that the new requirements were in any way unreasonable or not in the public interest. The building inspector, therefore, quite properly refused to issue a building permit on the sole ground relied upon by him, namely, that the lot did not conform with the minimum frontage requirements

for residential lots. The only way, then, that the plaintiffs could properly use this lot alone for residential construction was to obtain a variance from the board of adjustment pursuant to *N. J. S. A.* 40:55–39(*c*) permitting such use contrary to the zoning requirements.

This brings us to the next issue in the case—the propriety of the denial of the plaintiffs' application for such a variance. We begin with the fundamental proposition that the action of the board of adjustment in denying the variance is presumed to be correct and the burden of proving otherwise is upon the party attacking it, *Home Builders Ass'n of Northern New Jersey v. Paramus Borough,* 7 *N. J.* 335, 343 (1951); *Rexon v. Board of Adjustment, Haddonfield,* 10 *N. J.* 1 (1952). Our task is to review the circumstances and to sustain the denial of the variance "in the absence of an affirmative showing that it was unreasonable, arbitrary or capricious," *id.,* 10 *N. J.,* at *page 7.* The only reasons upon which the action of the board of adjustment could properly be sustained are those relating to the knowledge by the plaintiffs at the time of their purchase of lot 366A that it did not comply with the then existing zoning requirements and relating to the detriment to the public good that would be caused by a granting of the variance. But the detriment to the good and welfare of the community relied upon by the board was based upon matters not germane to its inquiry nor bearing on the merits of the question of undue hardship in the circumstances present here. The fact that the plaintiffs may have violated the law in starting construction without a proper permit or may have interfered with the rights of the borough in the drainage easement and as a result might have caused harm to others should not have been considered in determining the existence of that degree of hardship requiring the granting of relief. Certainly, the circumstances relating to the surveyor's error had no bearing on this issue. That matter had been concluded to the definite advantage of the property in question. Moreover, there is nothing here to indicate that when the plaintiffs purchased this lot they

knew anything about any inability to build upon this lot because of the drainage brook or had any advice from the borough on this matter. If, therefore, the board's action is to be sustained it can only be by virtue of the reasonableness of the one remaining basis for its action—the knowledge of the plaintiffs at the time of their purchase that this lot was less than the minimum size required by the ordinance for residential construction.

In the evaluation of a claim of undue hardship, the purchase of land after the adoption of an ordinance prescribing a greater requirement than can be complied with is a circumstance to be considered, *Beirn v. Morris,* 14 *N. J.* 529, 535 (1954). It is not conclusive by any means, but it is unquestionably a material element bearing on the issue, *Lumund v. Board of Adjustment of the Borough of Rutherford,* 4 *N. J.* 577, 581 (1950), and weighs heavily against the plaintiffs' claim, *Home Builders Ass'n of Northern New Jersey v. Paramus Borough, supra,* 7 *N. J.* 335, 343 (1951). In *Peterson v. Board of Adjustment of Town of Montclair,* 7 *N. J. Super.* 282 (*App. Div.* 1950), the separation of a lot containing a residential building restricted to uses accessory to a main residence on the same parcel by sale of the main residence and its lot with knowledge of restrictions was held not to entitle the owner to a variance even though the lot was thereby rendered useless. The court there said, 7 *N. J. Super.,* at *page* 287:

"* * * The hardship relied upon was created by the plaintiff when, in violation of the ordinance, he carved lot No. 91 from the original lot. The statute was not intended to provide for relief from this type of hardship."

But here we have ameliorating circumstances that render the knowledge of the plaintiffs less controlling than in the cases cited. Lot 366A in the hands of its owner at the time of the adoption of the new restrictions was unquestionably entitled to a variance on the ground of undue hardship under *N. J. S. A.* 40:55–39(c) which provides:

"The board of adjustment shall have the power to:

\* \* \* \* \* \* \* \*

c. Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or by reason of exceptional topographic conditions, or by reason of other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under the act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the owner of such property, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship; *provided, however,* that no variance shall be granted under this paragraph to allow a structure or use in a district restricted against such structure or use.

\* \* \* \* \* \* \* \*

No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."

But this is as far as we can agree with the dissenting judge in the Appellate Division. There are circumstances that we can conceive of in which a purchaser from Thompson Associates, Inc., should not be entitled "incontestably" to a variance and that it would be beyond the intention of the statute to grant it. The cases arising must be considered each on their own facts as they arise without any rights of prior owners tacked on. If this were not the case, the spirit of the zoning act which is to limit departures from the literal requirements of zoning ordinances would be quickly thwarted, for the accumulation of such rights would tend to call for variance far beyond the point where for the public good and welfare they should have ended. We therefore think it a better rule, as we have said, that each case be considered for itself in the search for the necessary undue hardship.

When the plaintiffs made application to the planning board in October 1954 for realignment of the lot lines, there was obviously no reason to move the lot line between lots 366A and 366B except to create a larger parcel than 50 feet upon which to build a house. Lot 366A was in no way involved with the surveyor's error and there was no

need to adjust the line unless it was intended that a building parcel be carved out. This realignment came after the board of adjustment had granted a variance with respect to the northerlymost 50 feet of lot 365A. It is perfectly understandable, then, that in these circumstances the plaintiffs believed that since they had made 366A a more attractive lot from the area and frontage standpoint, they would, of course, receive a variance on that lot as they had on their other lot. It was only after the occurrence of both of these circumstances that the plaintiffs sold the house on the newly aligned lot 366B. Good faith is conceded. There was no indication of any purposeful effort to avoid the restrictions of the new zoning ordinance which of course would be sufficient basis for denying any hardship relief, cf. *Herman v. Board of Adjustment, Parsippany-Troy Hills Tp., supra,* 29 *N. J. Super.* 164 (*App. Div.* 1953). The plaintiffs honestly believed that they could build on lot 366A and needed only to satisfy the proviso imposed by the planning board as a condition of the realignment.

The acquisition by the plaintiffs of lot 366A after the passage of the new ordinance and while they owned the property adjoining it may have been sufficient basis for denying them relief by variance if at the time of the application for the variance they still owned the adjoining property or if they transferred it hoping in that way to create a basis for a variance. But in the circumstances of the case before us where there was an increase in the area of a lot and then a severance of the lot from the adjoining parcel in complete good faith, we fail to see any justice or reasonableness in denying the relief sought.

But these considerations by no means dispose of the matter. The problems of drainage that have arisen as a result of the extensive land development of the past decade are far too serious to be passed over lightly. It was not until poor planning and this wholesale development of land caught many communities unaware and without adequate power, means or foresight to compel developers to provide for necessary drainage that the true aspects of the drainage

problem became known. Instances were not uncommon where because of poor drainage septic tanks were rendered ineffective and their effluent caused to flow into open surface drainage brooks to the great detriment of the communities concerned. By the Municipal Planning Act of 1953, *L.* 1953, *c.* 433, *N. J. S. A.* 40:55–1.1 *et seq.,* the planning boards were expressly given the power to compel adequate drainage on lands to be subdivided or resubdivided for sale or building development, with a view toward alleviating some of the existing bad conditions and avoiding the creation of new problems in drainage. In section 20 of the act, *N. J. S. A.* 40:55–1.20 it is provided that:

"In acting upon plats the planning board shall require, among other conditions in the public interest, that the tract shall be adequately drained, * * *

*The planning agency shall further require that all lots shown on the plats shall be adaptable for the intended purposes without danger to health or peril from flood, fire, erosion, or other menace.*

If portions of the master plan contain proposals for drainage rights-of-way, schools, parks, or playgrounds within the proposed subdivision or in its vicinity, or if standards for the allocation of portions of subdivisions for drainage rights-of-way, school sites, park and playground purposes have been adopted, before approving subdivisions the planning board may further require that such drainage rights-of-way, school sites, parks or playgrounds be shown in locations and of sizes suitable to their intended uses. The governing body or the planning board shall be permitted to reserve the location and extent of school sites, public parks and playgrounds shown on the master plan or any part thereof for a period of one year after the approval of the final plat or within such further time as agreed to by the applying party. Unless during such one-year period or extension thereof the municipality shall have entered into a contract to purchase or instituted condemnation proceedings according to law, for said school site, park or playground, the subdivider shall not be bound by the proposals for such areas shown on the master plan. This provision shall not apply to the streets and roads or drainage rights-of-way required for final approval of any plat and deemed essential to the public welfare." (Emphasis supplied)

It is also provided in section 2 of the act, *N. J. S. A.* 40:55–1.2 that:

" 'Subdivision' means the division of a lot, tract, or parcel of land into two or more lots, sites or other divisions of land for the

purpose, whether immediate or future, of sale or building development; * * * Subdivision also includes resubdivision, and where appropriate to the context, relates to the process of subdividing or to the lands or territory divided."

It is the obvious intent of the act that in matters requiring the approval of the planning board it should have the authority to impose those conditions which in the circumstances it believes are reasonably necessary for the protection of the public good and welfare. The act clearly gives the planning agency the authority to require that "all lots shown on the plats shall be adaptable for the intended purposes without danger to health or peril from flood." The plaintiffs had the right to accept the existing lot lines as laid down on the original subdivision, but in seeking a resubdivision of a portion of that map they subjected themselves to the terms of the act and the conditions validly imposed upon them by the planning board under the authority of the act.

It is proper on the facts here to assume that the easement granted by Thompson Associates, Inc., to the Borough of Florham Park in 1950 was part of a greater drainage plan which the planning board was endeavoring to protect in conditioning further use of lot 366A. Since the drainage ditch ran almost diagonally across the lot it was also proper for it to determine at the appropriate future date whether the lot was adaptable for the purpose for which it would actually be put without danger to the public health and welfare from sewage and flooding.

It therefore follows that the plaintiffs are entitled to a variance with respect to the operation of the zoning ordinance. On oral argument it appeared that the house could be erected without interfering with the easement of the municipality relating to drainage, but since the record is not clear in this respect the matter should be remanded to the planning board for consideration of this aspect of the case and the building permit should issue unless it should affirmatively appear that the erection of a house on the lot

in question will adversely affect the municipality's rights in the easement.

The judgment is accordingly reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—6.

*For affirmance*—Justice HEHER—1.