52 N.J. Super. 44 (1958)
144 A.2d 724
ROBERT GOLDSTEIN AND GASKEL GOLDSTEIN, PLAINTIFFS-RESPONDENTS,
v.
PLANNING BOARD OF THE BOROUGH OF LINCOLN PARK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1958.
Decided September 16, 1958.
*46 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Harry L. Sears argued the cause for defendant-appellant (Messrs. Young & Sears, attorneys).
Mr. Richard Heller argued the cause for plaintiffs-respondents (Messrs. Heller & Laiks, attorneys; Mr. Murray A. Laiks, of counsel).
The opinion of the court was delivered by FREUND, J.A.D.
Defendant appeals from a declaratory judgment granted on plaintiffs' motion for summary judgment in the Superior Court, Law Division.
The facts are undisputed and may be succinctly stated as follows: The mayor and council of the Borough of Lincoln Park, on July 7, 1924 approved a certain map, which was *47 duly filed, pursuant to the Old Map Act (R.S. 46:23-1 et seq., since repealed), in the office of the Clerk of Morris County, New Jersey, on September 25, 1924. Delineated on the map are a great number of lots, practically all of them undeveloped, and a number of unimproved streets. Generally, the lots are 50 feet in width by 100 feet in depth; the street widths are 20 feet. The present zoning ordinance of Lincoln Park requires minimum lot sizes of 100 feet in width by 150 feet in depth. The borough's subdivision ordinance requires a minimum dedicated street width of 50 feet.
According to an uncontradicted affidavit of Gaskel Goldstein, the plaintiffs held a mortgage encumbering 44 of the lots shown on the map, and, to avoid foreclosure proceedings, the lots were conveyed to the plaintiffs by deed dated April 10, 1957. Plaintiffs have purchasers for some of the lots. They want to make conveyances describing those lots without any deviation from the lot lines shown on the said map. Plaintiffs inquired of the defendant planning board "as to whether the sales could be made without first securing permission from the Planning Board for a sub-division." The defendant in reply stated "before any property is sold from the Robert Goldstein and Gaskel Goldstein holdings, it is necessary to make application to the Planning Board of Lincoln Park." The reply further stated "The Subdivisions must also adhere to the requirements and regulations in effect."
Fearful of prosecution or other litigation under N.J.S.A. 40:55-1.23 if they proceeded with the conveyances, plaintiffs instituted the present action. Among other things, judgment was sought to declare the right of the plaintiffs to effect such sales even without the board's approval.
Defendant's answer contains separate defenses claiming plaintiffs are not entitled to a certificate of subdivision approval, the filed map is obsolete, and the provisions of the Planning Act of 1953 have rendered in law the sales of lots, either singly or in groups, subject to the jurisdiction of the municipal planning board. After summary hearing, the trial judge entered judgment declaring that plaintiffs *48 have the right to sell and convey the lots as shown on the old filed map, notwithstanding the board's refusal to approve. Referring to his opinion in Lake Intervale Homes v. Parsippany-Troy Hills Tp., 47 N.J. Super. 334, 349 (Law Div. 1957), he reasoned that the Legislature granted municipalities only the right to regulate "subdivisions," whereas the sale of lots shown on maps filed under the Old Map Act, R.S. 46:23-1 et seq., could not constitute "subdivision." The Old Map Act was repealed by L. 1953, c. 358, p. 1941, § 7; N.J.S.A. 46:23-9.7.
The question for determination is whether the plaintiffs, as owners of the lots laid out and shown on a map, filed under the Old Map Act, R.S. 46:23-1 et seq., may convey these lots without any change in lot lines, either singly or in groups, without approval by defendant planning board. Is a sale of lots, clearly delineated on a map conforming in all respects to the requirements of the Old Map Act, "a subdivision" within the meaning of the Municipal Planning Act (1953), N.J.S.A. 40:55-1.1 et seq.?
The defendant argues that if planning board approval is not required for the sale of lots shown on an old filed map, the planning process will be rendered ineffective. That result, it is said, is at odds with legislative intention. The board urges that the controls provided by the Planning Act are ineffective if the plaintiffs can indiscriminately sell lots "off the side of a mountain on 20 foot dedicated streets with grades up to 15 to 17%." The argument runs that, were we to affirm, serious consequences are in the offing. The lots might not conform to zoning requirements, and the sales might present a problem of street improvements and drainage. We think, however, that that argument goes too far. The trial judge clearly stated in his oral opinion that the judgment in favor of the plaintiffs does not mean that the municipality ever has to issue, or ever will issue, any building permits. Indeed, another statute, N.J.S.A. 40:55-1.30 et seq., deals with the circumstances in which building permits will be issued, and authorizes a municipality to withhold a building permit if the land does not abut on *49 a street which it finds suitably improved. Moreover, any future building on the premises will be subject to the provisions of the local zoning ordinance. Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94, 103 (1957).
The board vigorously argues that approval of the map under the Old Map Act did not oust the planning board of jurisdiction to require subdivision approval. True, there is a mandate that requires us to construe constitutional and statutory provisions liberally in favor of municipalities. Article IV, Section VII, paragraph 11 of the Constitution of 1947; N.J.S.A. 40:55-1.2 et seq. The legislative intention is to give municipalities the fullest and most complete powers possible. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64, 71, 72 (1952). But the defendant has failed to refer us to any statutory provision which gives the Planning Act of 1953 retroactive effect. The reason is that there is no such provision. It is a basic rule of statutory construction that legislation is to operate prospectively unless the Legislature expressly or impliedly provides for retrospective operation. Lake Intervale Homes v. Pansippany-Troy Hills Tp., supra, 47 N.J. Super. at page 348. In our judgment, the Planning Act does not reach back so far. "Planning and zoning powers may not be exerted by indirection; the exercise of these functions must needs be in keeping with the principles of enabling statutes." Reid Development Corp. v. Parsippany-Troy Hills Tp., 10 N.J. 229, 238 (1952); Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405 (1952).
Further, it is argued that approval of maps under the Old Map Act is subject to a subsequent valid exercise of the police power, and that such approval, therefore, does not grant immunity from provisions of the Planning Act of 1953. The rule is established in zoning that the delineation of lots on a map filed with municipal approval does not necessarily carry with it any guaranty that each lot or parcel will be sufficient in itself to build upon when the time comes for the owner to build. Ardolino v. Florham Park Board of Adjustment, supra, 24 N.J. at page 103. The same *50 principal, it is contended, should apply to planning; i.e., that where an old filed map exists, and the property is undeveloped and substandard in terms of present zoning and planning requirements, any sale of lots on such map should be considered a "subdivision" within the meaning of the Planning Act. As authority for the position that zoning principles apply to planning, the board relies on certain language in Ardolino v. Florham Park Board of Adjustment, supra. We agree that municipal zoning and planning have been considered so closely akin as to constitute a single conception, although they do not cover identical fields of municipal endeavor. Mansfield & Swett, Inc., v. Town of West Orange, 120 N.J.L. 145 (Sup. Ct. 1938); Rockhill v. Chesterfield Tp., 23 N.J. 117, 120 (1956); 8 McQuillin, Municipal Corporations (3d ed. rev.), § 25.08, p. 31. This is not to say that distinctions have not been offered. It has frequently been stated that zoning is use planning and use regulation according to districts or zones. It differs from municipal planning since it looks to the control of future developments of the use of land and buildings only to the extent that it can be accomplished through regulation of existing conditions. See, for example, 8 McQuillin, supra, p. 32.
Yet the exercise of the municipal police power in this case must of necessity look to statutory authorization; in our judgment, the Planning Act provides no such authorization. That act may be invoked here only if we are dealing with a "subdivision." The term "subdivision" is defined as follows in N.J.S.A. 40:55-1.2:
"`Subdivision' means the division of a lot, tract, or parcel of land into two or more lots, sites or other divisions of land for the purpose, whether immediate or future, of sale or building development; except that the following divisions shall not be considered subdivisions within the meaning of this act; * * * Subdivision also includes resubdivision, and where appropriate to the context, relates to the process of subdividing or to the lands or territory divided."
We are of the opinion that a sale of lots which does not disturb the existing lot lines on an already filed map can *51 in no sense be considered a "subdivision" within the meaning of the statute. Had the Goldstein holdings been owned by a number of individuals, each of whom desired to convey his lot, there would have been no "division of a lot, tract, or parcel." We do not see wherein a different result should obtain simply because all the already divided lots were owned by one party or by related parties. Lake Intervale Homes v. Parsippany-Troy Hills Tp., supra, 47 N.J. Super. at page 349.
The defendant maintains that the contrary view was espoused in Clauss v. Postma, 32 N.J. Super. 147 (Law Div. 1954). It was there held that an owner who combined four lots with 20 feet frontage each to make an 80-foot frontage was "resubdividing" within the purview of the Planning Act. We think that that case is distinguishable on its facts. Moreover, insofar as it is based on reasoning contrary to that underlying Lake Intervale Homes, we disapprove of it.
Affirmed; without costs.