41 N.J. Super. 582 (1956)
125 A.2d 543
JOSEPH J. ARDOLINO AND CARMELLA ARDOLINO, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
BOARD OF ADJUSTMENT OF THE BOROUGH OF FLORHAM PARK, MORRIS COUNTY, NEW JERSEY, AND ALBERT P. COUVRETTE, BUILDING INSPECTOR AND ZONING OFFICER OF THE BOROUGH OF FLORHAM PARK, MORRIS COUNTY, NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1956.
Decided October 3, 1956.
*585 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. John B. Applegate argued the cause for the plaintiffs-appellants (Messrs. Besson & Applegate, attorneys).
Mr. Elden Mills argued the cause for the defendants-respondents (Messrs. Mills & Mills, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal from a judgment of the Superior Court, Law Division, affirming the action of the defendant board of adjustment in refusing to grant a building variance as to Lot 366A on Lakeview Avenue, in Florham Park.
While the record before us is extremely meager, the substantial facts are not in dispute. In 1948 the plaintiffs acquired Lot 365A and built a house thereon. In 1954 the plaintiffs discovered that due to an error in surveying a portion of their house was actually on the adjoining southerly lot, 366B. Accordingly, they purchased that lot, giving them a total frontage on Lakeview Avenue of 126.83 feet.
On August 13, 1954 the Mayor and Council of the Borough of Florham Park adopted a zoning ordinance, which required building lots in such a residential district to have a minimum street frontage of 100 feet and a minimum area of 15,000 square feet.
Although the record makes no mention of the fact, there is some indication in the briefs, and it was stated on oral argument, that shortly after the adoption of the ordinance *586 the plaintiffs obtained a variance and built a dwelling on the northerly 50 feet of Lot 365A. Thereafter, on September 28, 1954, the plaintiffs purchased a third lot, 366A, adjoining Lot 366B on the south and having a frontage of 50 feet. They then owned Lot 365A on which they had erected a dwelling; to the south, Lot 366B on which they had previously built a house and garage; and, again to the south, the newly acquired lot, 366A  the three lots having a combined frontage of 176.83 feet. Thereupon, the plaintiffs applied to the planning board for a realignment of their lot lines to give Lot 365A a frontage of 50 feet, Lot 366B a frontage of 64.83 feet and Lot 366A a frontage of 62 feet. The application was granted, with the proviso that "no building permit be issued for lot 366A without further referral to the Planning Board."
On November 1, 1954 the plaintiffs sold Lot 366B and the house erected thereon, retaining Lot 366A to the south with its 62-foot street frontage. It is not clear whether they also sold the most northerly lot, 365A, but in any event Lot 366A, an undersized lot according to the zoning provisions, was isolated from the adjoining Lot 366B.
In September 1955 the plaintiffs applied to the building inspector for a permit to build a residence on Lot 366A, which was refused because of the non-compliance of the lot with the 100-foot minimum frontage requirement of the zoning ordinance. They thereupon applied to the board of adjustment for a variance. On September 28, 1955 the local board of adjustment at a hearing considered the plaintiffs' application. The minutes of the meeting disclose that it was stated that the subdivision or realignment approval had been given to correct the difficult situation in which Mr. Ardolino found himself due to the faulty survey. Mr. Murer, a member of the board, stated that Ardolino "had been advised when he inquired about the possibility of a variance for Lot 366A that he would have a problem if he bought the lot." He also stated: "Knowing the facts, Mr. Ardolino could not claim a hardship if he were not permitted to use the lot." At the public hearing, interested *587 property owners objected to the granting of the variance. At a meeting on October 26, 1955 the board by resolution denied the variance.
Ardolino instituted the present action to compel the issuance of a building permit and to review the denial of the variance by the board of adjustment. The Law Division affirmed the action of the board of adjustment and the plaintiffs appealed. The grounds here raised are: (1) that because Lot 366A had only a 50-foot frontage at the time of the adoption of the ordinance which required 100-foot frontage for a building on the lot in question, it constituted a non-conforming use under both the statute, R.S. 40:55-48 and section 10.1 of the ordinance; (2) that the right to use a non-conforming lot passes by subsequent conveyance to grantees; (3) that an estoppel arises in favor of the owner where the planning board approved the realignment of the lot lines so as to upgrade the frontage of Lot 366A from 50 to 62 feet; and (4) that the refusal of the board of adjustment was unreasonable, arbitrary or capricious.
The statute, R.S. 40:55-48, provides as follows:
"Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the building so occupied and any such structure may be restored or repaired in the event of partial destruction thereof."
The pertinent provision of the Florham Park zoning ordinance reads as follows:
"The lawful use of any building or land existing at the time of the enactment of the original ordinance or at the time of any of the amendments changing the zones or uses may be continued although such use does not conform to the provisions of this ordinance."
When the ordinance was adopted on August 3, 1954, Lot 366A was a vacant lot with a frontage of 50 feet. The appellants argue that prior to the adoption of the ordinance Thompson Associates, Inc., their grantor, could have used the lot for the erection of a one-family dwelling, having, upon application, received a building permit therefor. They *588 urge that such right of their grantor should not be extinguished by its conveyance of the premises to them. The record reveals that on September 27, 1954, when the appellants acquired Lot 366A, they were the owners of Lots 366B and 365A, and that the three lots had a combined frontage of 176.83 feet, more than the minimum. It is not necessary for us to pass upon the question of whether or not the appellants succeeded to the right, if any, of their grantor, for they owned contiguous lots, nor was it necessary for them to acquire Lot 366A to get out of their difficulty by reason of the survey error, for after the purchase of Lot 366B their plot had a frontage of 126.83 feet, more than the 100-foot minimum required by the ordinance. The trial court concluded, and we agree, that Lot 366A was not acquired in order to achieve conformity with the ordinance.
We find no merit in the appellants' contention that Lot 366A having a frontage of only 50 feet at the time of the adoption of the zoning ordinance was a non-conforming use and continues as such, so that they should now be permitted to build thereon a one-family dwelling. By the ordinance the surrounding area was zoned for one-family dwellings, with a minimum lot requirement of 100-foot frontage. The use at the time of the adoption of an ordinance establishes the non-conforming use which an owner is entitled to continue; it must be the same both before and after the adoption of the ordinance. Struyk v. Samuel Braen's Sons, 17 N.J. Super. 1 (App. Div. 1951), affirmed 9 N.J. 294 (1952). The statute affords protection to prior existing non-conforming uses, but they may not be enlarged or extended. Borough of Rockleigh, Bergen County v. Astral Industries, 29 N.J. Super. 154 (App. Div. 1953); Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189 (1955). It is the actual use at the time the ordinance is adopted as distinguished from any contemplated use which determines whether or not the premises are a non-conforming use. A mere intention to build a residence is not enough to establish a non-conforming use. The statute protects existing uses, it does *589 not deal in intentions. Martin v. Cestone, 33 N.J. Super. 267 (App. Div. 1954); Board of County Commissioners of Anne Arundel County v. Snyder, 186 Md. 342, 46 A.2d 689, 692 (Ct. App. 1946). Here, no residential use was in existence when the ordinance was adopted; hence, the premises do not constitute a non-conforming use. Walton v. Stephens, 124 N.J.L. 216 (Sup. Ct. 1940).
The appellants next urge that their having obtained approval from the planning board for a realignment of the boundary lines of their three lots, and in particular having increased the frontage of Lot 366A from 50 to 62 feet, should operate as an estoppel, relying upon the following provision of N.J.S.A. 40:55-1.25:
"Any person who shall acquire for a valuable consideration an interest in the lands covered by any such certificate of approval of a subdivision in reliance upon the information therein contained shall hold such interest free of any right, remedy or action which could be prosecuted or maintained by the municipality pursuant to the provisions of section twenty-three of this act. * * *"
The inapplicability of the statute is readily apparent. The plaintiffs did not acquire any interest in Lot 366A by reason of the approval of the application for realignment of lot lines which could affect the municipality's right to deny an application for a building permit in violation of the zoning ordinance. Indeed, the approval contained the condition "that no building permit be issued for Lot 366A without further referral to the Planning Board." We need not, and do not, pass on the legal validity of such condition; it is sufficient to say that from this conditional approval the plaintiffs cannot meritoriously assert an estoppel which would preclude the municipality from denying a permit for a building on a lot, the frontage and area of which are not in conformity with the zoning ordinance. Rodee v. Lee, 14 N.J. Super. 188 (Law Div. 1951).
The last point urged is that the action of the board of adjustment in denying the requested variance was unreasonable, arbitrary or capricious. It is axiomatic that the determination of whether a variance from a zoning ordinance *590 is to be allowed is a matter for the sound discretion and judgment of the local board of adjustment and this court will not substitute its judgment for that of the board unless there has been an abuse of discretion and its action is found to be unreasonable, arbitrary or capricious; and the burden of proof is upon the plaintiff. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64 (1952); Cobble Close Farm v. Board of Adjustment of Middletown Tp., 10 N.J. 442 (1952).
The plaintiffs rely principally upon the authority of Rodee v. Lee, supra, which is clearly distinguishable on the facts. There, the application was for a variance to permit buildings on each of 11 lots, each having a width exceeding 50 feet but less than the 100-foot width required by the local zoning ordinance. Four of the lots were contiguous to one another, as were five others; two were isolated from all the others. The court held that the contiguous lots should be divided into conforming lots, each having a frontage of at least 100 feet. With respect to the two isolated lots, the court granted variances on the ground of exceptional hardship since the lots were in a residential zone and could not be used for other than residential purposes. In the instant matter, there are additional factors which must be considered. The plaintiffs purchased Lot 366A with full knowledge of the terms of the zoning ordinance. Ardolino was told prior to acquiring the lot, upon inquiring of the possibility of securing a variance, that "he would have a problem if he bought the lot." In Lumund v. Board of Adjustment of the Borough of Rutherford, 4 N.J. 577, 581 (1951), it was stated that the fact that a property purchase was made with full knowledge of existing zoning restrictions is not conclusive, but merely a material element, in determining the existence of a hardship. An additional factor is that when the plaintiff purchased Lot 366A he owned the adjoining Lot 366B which had a house on it. After approval of the changes in the lot lines, the total frontage of the two lots was 126.83 feet, more than the 100-foot frontage required by the ordinance if the two *591 lots be considered as one. However, the plaintiffs chose to sell Lot 366B and retain the undersized lot; and thus they themselves created their present predicament. It would appear that they purposely isolated Lot 366A relying upon securing a variance therefor, but voluntary and premeditated isolation does not constitute "exceptional hardship" within the meaning of the statute defining the power of the boards of adjustment in the allowance of variances. The hardship now claimed by the plaintiff was not created by the zoning ordinance; it was self-created and affords no basis for a variance. 1 Rathkopf, Law of Zoning and Planning, c. 48, p. 748 et seq.; Peterson v. Board of Adjustment of Town of Montclair, 7 N.J. Super. 282 (App. Div. 1950); Cobble Close Farm v. Board of Adjustment of Middletown Tp., supra. Accordingly, the denial of the plaintiffs' application for a variance was not such arbitrary, unreasonable or capricious action as to warrant our interference. Herman v. Board of Adjustment of Parsippany-Troy Hills Tp., 29 N.J. Super. 164 (App. Div. 1953).
Judgment affirmed.
CONFORD, J.A.D. (dissenting).
In or about 1948 plaintiffs built themselves a home on Lakeview Avenue in the Borough of Florham Park on what they thought was a parcel (Lot 365-A on a field map of Brooklake Park) which they owned. In 1954 it was discovered that through a surveyor's error most of the house was erected on the adjoining lot to the south, Lot 366-B. As a result, plaintiffs on August 9, 1954 purchased Lot 366-B, thus giving them 126.83 feet of frontage on Lakeview Avenue, the northerly 50 feet of which, within Lot 365-A, was free from encroachment by the Ardolino house and garage.
On August 3, 1954 the Borough of Florham Park adopted a zoning ordinance restricting the area in question to residential lots of 100 feet minimum frontage. Prior thereto Thompson Associates, Inc., owned Lot 366-A, the parcel here in contention, a 50-foot lot situated immediately to the south of Lot 366-B. That corporation did not own or *592 control the lot south of Lot 366-A, nor, of course, the one north, Lot 366-B. On September 27, 1954 Thompson Associates, Inc., conveyed Lot 366-A to the plaintiffs, and the latter then held 176.83 feet of continuous frontage in three lots, with a house and garage situated on the middle lot, Lot 366-B.
Thereupon plaintiff applied to the planning board of the borough for approval of a realignment of the three lots, reducing Lot 365-A from 76.13 feet to 50 feet in width, making Lot 366-B 64.83 feet in width (necessary because of the location of the house and garage) and increasing the width of Lot 366-A to 62 feet. This was approved by the board on October 18, 1954, after a hearing, but with the proviso that "no building permit be issued for Lot 366-A without further referral to the Planning Board." The condition was apparently imposed because of an easement held by the borough on a part of Lot 366-A for a drainage ditch.
On November 1, 1954 plaintiffs sold the house and lot comprised by Lot 366-B as thus revised. There is no question but what this sale was bona fide. It was in due conformity with the planning board action.
On September 12, 1955 plaintiffs made an application to the building inspector for a permit to build a residence on Lot 366-A as revised, and this was denied on the ground that the width of the lot did not comply with the 100-foot requirement of the zoning ordinance as amended in 1954. Thereupon plaintiffs filed an appeal with the board of adjustment of the borough asking, in the alternative, for a reversal of the ruling of the building inspector, on the theory that the lot was a prior nonconforming use, or for the grant of a "hardship" variance to permit the erection of a dwelling, under N.J.S.A. 40:55-39(c), because of the frontage deficiency of the lot.
After hearing, the board of adjustment denied the application, stating a number of reasons for refusal of variance, to be mentioned hereinafter, only one of which seemed material to the Law Division, that "applicants purchased *593 said property with the knowledge that the said lot did not comply with the zoning ordinance" of the borough. This basis for decision was regarded as sound and dispositive by the trial court. My colleagues add this additional ground of justification of the action of the board: that since plaintiffs owned the contiguous parcel, Lot 366-B, when they purchased the subject lot, and since both, together, exceeded the 100-foot minimum then applicable under the ordinance, plaintiffs had merely, in effect, brought Lot 366-B into conformity with the ordinance and were not entitled to a variance which would put both lots out of conformity, they having known the terms of the ordinance when they acquired Lot 366-A.
Essentially, the principal basis for my dissent is that Lot 366-A was incontestably entitled to a variance in the hands of its prior owner, under decisions to be cited; that the right of variance in that owner carries the incidental right that his alienee should ordinarily be entitled to the same variance; and that the ownership by plaintiffs of an adjoining improved lot did not impair their right, as grantees of Thompson Associates, Inc., to an allowance of the variance, notwithstanding that they purchased the lot after adoption of the restrictive ordinance.
As to the proposition that Thompson Associates, Inc., as owner of an isolated 50-foot lot not inherently unsuitable for a one-family dwelling, was entitled to a variance for such use as against the more restrictive requirements of an after-adopted ordinance, there is no doubt. DeMoss v. Borough of Watchung, 137 N.J.L. 503 (Sup. Ct. 1948); Rodee v. Lee, 14 N.J. Super. 188 (L. Div. 1951). What the court said in the DeMoss case (137 N.J.L., at page 504) is apposite here:
"Under the peculiar circumstances presented the case is one of hardship requiring the granting of the exception. If the exception is not granted, then no building can be erected on the lot, and it will not be usable at all, except possibly for farming. It is not large enough for this."
*594 The deprivation of a variance to Thompson Associates, Inc., would constitute an arbitrary confiscation of its property. Clearly, then, its ownership must include the incidental right of alienation after the adoption of the ordinance to a grantee having the similar right to apply for a variance without pain of automatic disqualification merely because the purchase postdates the ordinance. Were it otherwise, the value of the prior owner's right, and consequently of his property, would be substantially impaired unjustly. The applicant in the DeMoss case, supra, significantly, had acquired the property subsequent to the adoption of the restrictive ordinance, yet was given relief.
The cases stressed by defendants and by the majority involving the factor of knowledge of the zoning restrictions at the time of applicants' acquisition of the subject property are not relevant, since, in all of them, the particular ordinance left the property in question lawfully utilizable in some kind of use, whereas the lot here involved would, in the language of the DeMoss opinion, supra, "remain `a lot' in perpetuity." Cf. Lumund v. Board of Adjustment of Borough of Rutherford, 4 N.J. 577 (1950); Tzeses v. Board of Trustees of Village of South Orange, 22 N.J. Super. 45 (App. Div. 1952); Marrocco v. Board of Adjustment of City of Passaic, 5 N.J. Super. 94 (App. Div. 1949).
If the thesis stated above is accepted, it might well, in logic, warrant the correlative conclusion that plaintiffs, though adjoining owners, should have been under no greater disability to purchase the Thompson Associates, Inc., parcel and apply for a variance therefor without prejudice than a complete stranger to the area purchasing the property. But, passing this, I am unable to agree with my colleagues that the particular circumstances attending plaintiffs' ownership of Lot 366-B when they acquired Lot 366-A justify affirmance of the denial of the variance on the theory that the lots could be considered as an assembled parcel, thus brought into conformity with the ordinance. Cf. Rodee v. Lee, supra (14 N.J. Super., at page 191). In the Rodee case the assembled lots were vacant land and adaptable for *595 utilization in compliance with the ordinance. In the present case Lot 366-B was improved, before plaintiffs acquired Lot 366-A and long before the ordinance was adopted, with a house and garage positionally adapted to Lot 366-B alone (particularly as revised by the planning board). In no realistic sense could the house and garage be said to be situated on the two lots together, 366-A and 366-B, considered as an integrated parcel. While some people like to own a vacant side-lot alongside their homes, most do not. Arbitrary treatment of these properties to compel such a conjoined ownership is unjustified. I am, therefore, constrained to consider plaintiffs' ownership of the improved parcel, Lot 366-B, at the time of their purchase of the vacant Lot 366-A, as totally irrelevant to the question as to their right to a variance for the latter so as to give it the normal residential utility otherwise absent, a right which any other purchaser thereof from Thompson Associates, Inc., would concededly have.
The "exceptional narrowness" of the parcel constituted an "undue hardship" to the owners and required relief from the board of adjustment under the statute and the cases cited. As now held by them, this 62-foot lot is completely useless.
An independently compelling basis for reversal is found in the fact that of the seven specific "reasons" given by the board of adjustment for its action, five, aside from the one discussed above, were entirely without legal relevancy but may well have been the controlling factors in the board's decision. Summarized, these were: (a) familiarity of plaintiffs with the drainage brook on the lot and that the board and the planning board had advised them "it may not be advisable to build upon the lot"; (b) the previous error of plaintiffs in locating the dwelling erected; (c) commencement of construction of a foundation on the premises without a permit; (d) alteration of a drainage brook on the lot contrary to the rights of borough; (e) the change of course of the brook has burdened the property with additional water. None of these matters properly *596 concerned the merits of the application before the board. Certainly the borough's rights vis a vis the property owners as to the drainage brook were not relevant to the application for variance. The other "reasons" were equally irrelevant, and consideration of such matters was patently prejudicial.
Even if, contrary to what has been said in the first part of this opinion, plaintiffs' knowledge of the zoning restrictions and their ownership of the contiguous lot were proper factors for consideration by the board, they were not conclusive, Lumund v. Board of Adjustment of Borough of Rutherford, supra (4 N.J., at page 581), and the least the plaintiffs were entitled to was a consideration of their application without prejudice by the extraneous matters referred to as "reasons" in the board's determination. Would there have been a denial of a variance "were these factors ruled out as alien to the statutory policy and wholly inadmissible as a standard or rule of action"? Moriarty v. Pozner, 21 N.J. 199, 208 (1956). Plaintiffs are entitled to an answer to that question from the board itself and to the exercise by it of its administrative judgment upon a consideration confined to legally relevant factors grounded in the statute.
Either of the reasons outlined above, in my opinion requires reversal of the judgment before us.