(Board of Adjustment of the City of Rehoboth Beach), Frances D. BAKER, Defendant Below, Appellant,

v.

Lawrence J. CONNELL, Plaintiff Below, Appellee,

and

Frances D. BAKER, Plaintiff Below, Appellant,

v.

BOARD OF ADJUSTMENT OF the CITY OF REHOBOTH BEACH, Defendant Below, Appellee.

Supreme Court of Delaware.
Submitted: Jan. 22, 1985.
Decided: Feb. 22, 1985.

1304

Upon appeal from Superior Court of the State of Delaware, In and For Sussex County. Affirmed.

James B. Tyler, III (argued), Georgetown, and Eugene H. Bayard, Wilson, Halbrook & Bayard, Georgetown, for appellant.

James C. Sabo (argued), James C. Sabo, P.A., Georgetown, and John E. Messick, Tunnell & Raysor, Georgetown, for appellee.

Before HERRMANN, C.J., MOORE and CHRISTIE, JJ., BROWN, Chancellor, and BERGER, Vice Chancellor, constituting the Court en Banc.*

MOORE, Justice:

Frances D. Baker appeals the Superior Court's reversal of a variance granted her by the Board of Adjustment of the City of Rehoboth Beach (the Board) to build two townhouses on certain beach front land zoned as open space. The Superior Court ruled in favor of the appellee, Lawrence J. Connell, an adjoining landowner, on the ground that the record did not support the Board's finding that the open space zoning of the parcel made it unique. Thus, there was no unnecessary hardship, peculiar to this property, upon which to base a variance. We agree and affirm.

I.

The land is a corner lot located in the City of Rehoboth Beach (Rehoboth) along the boardwalk at the intersection with Hickman Street. It has been in Mrs. Baker's family for many years. In April 1951 Mrs. Baker's father, Fulton Downing, acquired a larger tract embracing this parcel. He then subdivided the property by selling one part, adjoining the present northern boundary of Mrs. Baker's lot (the Moss tract), and another to the rear, or west, along Hickman Street (the Connell lot). There is no formal record that he obtained prior approval to do this. Thereafter, all that remained is the land now held by Mrs. Baker, who inherited a one-third interest on her mother's death, and then acquired the balance from her two sisters. The result of these sales was that Mr. Downing disposed of the buildable land within the adjoining R–2, general residence district, while retaining the small beach front parcel now situated in an area zoned O–1, open space. No buildings or structures may be erected in the latter zone. As shown on the zoning map, part of the Moss tract and all land to the south between the boardwalk and the adjacent R–2 district is similarly zoned. However, it is not clear from the record whether there are any other single lots, like Mrs. Baker's, solely within the O–1 district rather than being part of larger parcels in the adjoining R–2 area.

In September, 1982 Mrs. Baker sought a permit to construct three townhouse units on her property. The application was denied by the Rehoboth building inspector, and Mrs. Baker immediately applied for a variance. At the public hearing before the Board, where she faced strong community opposition, Mrs. Baker testified that she is a realtor in Rehoboth and her primary reason for wanting to build the three units, instead of a single dwelling, was to maximize her financial return. She had not given other alternatives any serious consideration.[1] In support of her application Mrs.

---

* Chancellor Brown and Vice Chancellor Berger sat by designation of the Chief Justice, pursuant to *Del. Const.* art. IV, § 12.

1. Specifically, she testified:
 MR. CONNELL: Is your primary reason for desiring to build three units that you get a greater financial return from three units rather than a financial return that you might have gotten had you built or had you desired to build a single unit, a single family dwelling? Are you in it for the money?

Baker noted that within the same block several multi-unit buildings exist in the R–2 zone, including a house with three apartments on the Moss tract and a 36-unit condominium behind the adjoining Connell lot. Further to the north along the boardwalk, there is a commercial district.

The Rehoboth Beach Planning Commission (the Commission) had earlier recommended that the Board deny the variance because the proposed structure would "radically change the character of the neighborhood and ... set an extremely detrimental precedent with respect to the ocean-front properties south of Hickman Street." The Commission also noted that the building would be only 30 inches from the boardwalk, and would project far beyond the single family houses to the north (sic) and south, which are set back at least 100 feet from the boardwalk.[2]

The Board granted Mrs. Baker's request for a variance. Essentially, it found that the property was unique merely because it is zoned 0–1, and that certain other properties on the same block, but within the adjacent R–2 zone, contain multiple units. The variance, however, permitted construction of only two single family semi-detached houses rather than the three Mrs. Baker sought. The Board also imposed certain

set back requirements, which Mrs. Baker challenges, but in light of our conclusions it is unnecessary to reach those issues.

In reversing, the Superior Court ruled that the Board's action was an incorrect application of the law to the facts of this case. The Court concluded that the 0–1 zoning did not make the parcel unique. It also noted that there was no evidence of this being the only privately owned lot entirely within the 0–1 zone. Thus, the Superior Court held that Mrs. Baker had not met her burden of proving that either the plight of the premises, or her plight due to the circumstances of the premises, is unique. Accordingly, the court concluded that it was error for the Board to find "hardship" sufficient to warrant a variance.

Moreover, the Superior Court ruled that even if Mrs. Baker had presented evidence of ownership of the only privately owned parcel solely zoned as open space, that would not justify a variance. The Court observed that the need for a variance arises only when the plight of the property is unique in that it cannot reasonably be put to a *conforming* use because of the zoning restrictions. There was no evidence that the property could not conform to open space land. Furthermore, the Court

---

MRS. BAKER: I guess the answer to that would be yes.

**2.** The Commission's report provides in pertinent part:

The Rehoboth Beach Planning Commission recommends that the Board of Adjustment deny a variance to Frances and Wayne Baker for the construction of one building for three families living independently of each other on Hickman Street on Lots 1, 2 and 3—Block 61, Old Rehoboth City.

We believe that this proposed structure would radically change the character of the neighborhood and would set an extremely detrimental precedent with respect to the ocean-front properties south of Hickman Street. Permitting one owner to erect a building far forward of the other homes certainly invites more demands to build out to the same line as this applicant; indeed, other property owners would have to demand this same right or see the value of their property decline. Further-

more, the present character of the ocean-front in South Rehoboth is single family dwellings. This applicant seeks to build three dwelling units on one lot.

As shown on the plans, the front of the proposed building would be only thirty (30) *inches* from The Boardwalk and would project far beyond the single family residences to the North (sic) and South. To the North, the nearest structure built to The Boardwalk is a small summer sandwich shop which is located one block away in a C–1 Zone. The height of the sandwich shop is only twenty (20) feet. The proposed structure *with a height of thirty-five (35) feet* would be nearly twice as tall. The single family residences to the South are set back at least one hundred (100) feet from The Boardwalk. If the proposed structure is built, the unique openness of the ocean-front neighborhood— The South Boardwalk and dunes—will be changed beyond retrieval. (Emphasis in original.)

noted that there was no evidence that Mrs. Baker must expend funds from which she will not receive a reasonable return in order to use the parcel for open space purposes. Thus, the Court found that under all the circumstances the variance was improper.

## II.

On appeal to us Mrs. Baker contends that the Superior Court erred in reversing the Board, since the record supported its findings and the law was correctly applied. Specifically, it is contended that the Superior Court: (1) ignored its standard and scope of review to be bound by an administrative agency's findings of fact when they are supported by substantial evidence; (2) incorrectly applied the "unnecessary hardship" test to the circumstances of this case; and (3) misunderstood the unique character of Mrs. Baker's property.

On the other hand, Mr. Connell, the adjoining landowner who successfully overturned this variance in the Superior Court, argues that the Board's decision was properly reversed because: (1) Mrs. Baker failed to prove the existence of unique circumstances inherent in her land; and (2) the Board's decision exceeded the scope of its authority by effectively rezoning Mrs. Baker's land.

The parties raise other issues and contentions, but because of our affirmance of the Superior Court it is unnecessary for us to reach them.

## III.

### A.

The power of the Board to grant this variance, and the criteria for its issuance are established by 22 *Del.C.* § 327, which provides in pertinent part:

(a) The board of adjustment may:

\* \* \* \* \* \*

(3) Authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

When acting in conformity with its statutory powers the Board's paramount consideration is the public interest, and by its terms, the statute precludes any action which is contrary to that mandate. Thus, the Board must weigh that factor against the question of "special conditions", to determine whether a literal enforcement of the ordinance will result in "unnecessary hardship". But even in the face of an alleged hardship, the Board must observe the spirit of the challenged zoning ordinance and do substantial justice. Those legal principles are to be given effect in accordance with the facts of each case.

Other general principles also prevail. The applicant bears a heavy burden of showing unnecessary hardship, since it is recognized that a prohibited use, if permitted, would result in a use of the land in a manner inconsistent with the basic character of the zone. 8 McQuillin, Municipal Corporations § 25.160 (3d ed. 1983) [hereinafter cited as McQuillin]. Consistent with this Court's earlier opinion in *Homan v. Lynch*, Del.Supr., 147 A.2d 650 (1959), the prerequisite proof of such unnecessary hardship is that: (a) the land cannot yield a reasonable return if used only for the permitted use, (b) need for the variance is due to unique circumstances and not general conditions in the neighborhood which reflect unreasonableness of the zoning ordinance itself, and (c) the use sought will not alter the essential character of the locality. 8 McQuillin § 25.160. It is also a jurisdictional prerequisite that the applicant show in terms of monetary proof that all uses permitted on the land under existing zoning are economically unfeasible before a variance of this type may be granted. 8 McQuillin § 25.167. Since this is one element of the proof required of an applicant, some confusion could arise from the Supe-

rior Court's holding that the record was devoid of evidence that the property could not economically conform as open space land. We interpret this as a comment on the state of the record rather than the announcement of a legal principle. When dealing with an 0–1 classification, the question of conformance is but one element in the overall analysis. The fact that a vacant tract of land could conform to open space zoning would not foreclose proof that it is economically unfeasible to use the parcel for that purpose. Otherwise, the effect would be to preclude any variance for land in an 0–1 area. Such a blanket result would not comport with the existence and scope of the present statutory variance mechanism.

■ However, economic advantage, or conversely, economic hardship alone does not justify a variance. *Homan v. Lynch*, Del.Supr., 147 A.2d 650, 654 (1959). *In Re Emmett S. Hickman Co.*, Del.Supr., 108 A.2d 667, 674 (1954); *Searles v. Darling*, Del.Supr., 83 A.2d 96, 100 (1951); *Mavrantonis v. Board of Adjustment*, Del.Super., 258 A.2d 908, 911 (1969); *Reagan v. Heintz*, Del.Super., 246 A.2d 710, 712 (1968). Thus, it is no ground for a variance that one merely seeks or desires to erect a building or use land in violation of zoning restrictions. Even a desired, needed or justified change in a zoning scheme or ordinance is no ground for a variance. 8 McQuillin § 25.164.

### B.

■ Here, the alleged hardship flows from the fact that Mrs. Baker's father sold those portions of the original parcel within the adjacent R–2 district. These are the Moss and Connell properties. The remainder is the lot Mrs. Baker now owns, situated entirely in the open space zone. While the appellee argues that Mrs. Baker had prior knowledge of the existing zoning restrictions applicable to her land, which precludes her right to a variance, that in itself is not dispositive. It is merely an element to be considered in determining the existence of a hardship. *Searles v. Darling*, Del.Supr., 83 A.2d 96, 100 (1951).

■ However, one who conveys a portion of his land may well be precluded from claiming hardship with respect to the part remaining. *See Leimann v. Board of Adjustment of Cranford Township*, N.J. Supr., 9 N.J. 336, 88 A.2d 337, 340 (1952); *Ardolino v. Board of Adjustment of the Borough of Florham Park*, N.J.Super., 41 N.J.Super. 582, 125 A.2d 543, 547–48 (1956); 8 McQuillin § 25.168.[3] Moreover, if a predecessor in interest would be barred from obtaining a variance by his voluntary acts, then his successor would face a similar disqualification. *See Pollard v. Zoning Board of Appeals of the City of Norwalk*, Conn.Supr., 186 Conn. 32, 438 A.2d 1186, 1190 (1982).

■ Both Mrs. Baker and the Board placed significant emphasis on the fact that there were other multi-unit dwellings within the same block. While it is not entirely clear from the record whether these various multi-unit buildings are non-conforming uses, that in itself would not be a ground for the issuance of a variance. 8 McQuillin § 25.173. Moreover, the contiguous nature of Mrs. Baker's lot to an R–2 zone, and its nearby location to a commercial district, is not a per se ground for granting an exception or variance. It was suggested at oral argument that since boundary lines of contiguous zoning areas usually are designated by streets, there is something unique about this plot because it directly adjoins parcels in a different zone. However, tracts of land themselves may provide the boundary line between zoning

---

**3.** It is unclear from the record whether the 0–1 open space zone existed at the time of Mr. Downing's sales of other parts of this land. If it did, that would be a decisive factor here. However, even if there was no such zone at the time, the mere occurrence of a subsequent rezoning of unused land to open space provides no legal basis for a variance founded upon a hardship claim. *See Ardolino v. Board of Adjustment of the Borough of Florham Park*, N.J.Super., 41 N.J.Super. 582, 125 A.2d 543, 546 (1956).

districts, and such circumstance is not cognizable as a hardship. *Charles Land Co. v. Zoning Board of Review of Providence*, R.I.Supr., 99 R.I. 161, 206 A.2d 453, 456 (1965); 8 McQuillin § 25.174.

## IV.

 Given the foregoing legal principles, and the record here, we must conclude that the Superior Court correctly adhered to its standard and scope of review. When sitting as an intermediate court of appeals, and unless otherwise mandated by statute, the Superior Court's function basically is the same as that we impose upon ourselves under *Levitt v. Bouvier*, Del. Supr., 287 A.2d 671, 673 (1972). Upon this record we agree with the Superior Court that the findings of the Board are not supported by evidence sufficient to justify a legal conclusion of unnecessary hardship due to the unique character of Mrs. Baker's land.

Significantly, the Board made no finding that this variance is consistent with the public interest, nor is there any indication from its opinion that the Board addressed the spirit of the challenged zoning ordinance. The fact that this 0–1 zone adjoins an R–2 district may have considerable significance in the sense that it expresses a strong public policy against the encroachment of structures between the boardwalk and the general residential district. Given the clear statutory mandate of 22 *Del.C.* § 327(a)(3), this was a paramount issue before the Board in granting a variance based on alleged hardship.

 Moreover, the Superior Court's application of the facts here to the unnecessary hardship test clearly was correct.

While Mrs. Baker would like to maximize her financial return from the property, that objective, alone, never justifies a variance. As to the unique character of the land, the mere fact that it sits entirely within the 0–1 zone does not make it unique. There is no evidence that this lot is the only one of its type in Rehoboth. Nor does it become unique because it adjoins the R–2 zone containing multi-family units.

In any event, given Mr. Downing's sales of other parts of the original tract, a serious legal and factual question remains whether this has become a self-imposed hardship, and thus defeats any right to a variance. The Board did not address this issue.

 Under the circumstances we must agree with the appellee that the Board exceeded its powers. Rather than granting a variance, the Board effectively rezoned this lot. Such action is beyond the authority of any board of adjustment.

For the foregoing reasons the decision of the Superior Court, reversing the Board's grant of a variance upon this record, is

AFFIRMED.

## ORDER

This 22nd day of February, 1985, IT IS ORDERED pursuant to Rule 19(a) that the mandate in this matter shall issue on March 5, 1985.