## IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

DOUGLAS MILBOURNE and ORQUIDRA MILBOURNE, )

        Appellants,

v.

DERRICK SWINTON.

        Appellee.

) ) ) ) ) ) ) ) )

C.A. No. N24A-12-003 KMV

Submitted: July 28, 2025
Decided: October 30, 2025

## **ORDER**

*Upon Appeal from the Decision of the Court of Common Pleas*:
**AFFIRMED**

Douglas Milbourne and Orquida Milbourne; *Pro Se Plaintiff-Below/Appellant*.
Derrick Swinton; *Pro Se Defendant-Below/Appellee*.

**VAVALA, J.**

## I.  INTRODUCTION

Tenants of a residential rental property appeal from the Court of Common Pleas' entry of judgment against them in favor of the landlord in a dispute over back rent, retention of security deposit, and maintenance costs.  The tenants ask this Court to reverse the lower court's judgment awarding of back rent and maintenance costs to the landlord and, instead, find the tenants are owed double their security deposit.

## II.  BACKGROUND

This case arises from a contractual dispute between a landlord and his tenants. In January 2020, Douglas Milbourne ("Tenant") and Orquida Milbourne (together, "Tenants") entered into a rental agreement (the "Lease Agreement") with Derrick Swinton ("Landlord") to lease a home in Newark, Delaware (the "Property").[1]  The Lease Agreement was to commence on February 15, 2020 for one year, terminating on February 14, 2021, at a rate of $2,250 per month plus a security deposit of the same.[2]  Per the Lease Agreement, the Tenants received a $500 a month rent reduction

---

[1] The facts are taken from the Court of Common Pleas December 2, 2024, Decision After Trial, Case No. CPU4-21-003798 ["Dec. at #"].

[2] Dec. at 4.

for the first six months of the lease in exchange for "mak[ing] minor cosmetic repairs including resurfacing and staining the hardwood floors."[3]

Tenants moved into the Property early in order to paint and complete cosmetic repairs to the home.[4] Landlord had the property professionally cleaned prior to the Tenants' early move in.[5] Yet, during the initial months of the residency, "[a]lthough the Property was in a clean and habitable condition, various conventional maintenance needs arose" such as replacement of the dishwasher, fixing the faucets in the main bathroom, removal of a tree, and resurfacing of the driveway with blacktop.[6] Landlord "was not inattentive to Tenants' reported issues . . . and took reasonable and appropriate steps" to remedy the problems.[7]

In November 2020, however, "[t]he routine maintenance inconveniences gave way to a more significant issue . . . when the kitchen sink overflowed with grey water."[8] After contacting Landlord about the issue, but before a plumber arrived to address the problem, Tenant cleaned up the mess made by the overflow. The plumber cleared the blockage and suggested an enzyme drain cleaner be used on a

---

[3] Dec. at 4.

[4] *Id.*

[5] *Id.*

[6] *Id.* at 4-5.

[7] *Id.* at 4.

[8] *Id.* at 5.

bi-monthly basis.  The invoice totaled $400, which Tenant paid directly to the plumber and was deducted from the following month's rent.[9]  Unfortunately, the same issue occurred again in January 2021 when "Landlord had the issue resolved by a professional[,] but Tenant again took on the task of cleaning up the grey water himself."[10]  The invoice for the initial plumbing repair "note[d] that 'water restoration' was needed to remedy the overflowed grey water, at an estimated cost of $3,000,"[11] but Tenant had already cleaned up the water.  "[T]he invoice was admitted [at trial] only for purposes of establishing that Tenant paid the plumber $400 directly; Tenant failed to present a witness to testify as to the content of the invoice and the meaning of 'water restoration.'"[12]

Tenants also failed to resurface and re-stain the hardwood floors per the Lease Agreement.[13]  Consequently, Landlord "hired a flooring company to sand and stain the hardwood floors, for which [he] paid $1,610."[14]

Tenants stopped making rent payments on January 15, 2021.[15]  But they continued to reside at the Property until March 30, 2021, despite the Lease

---

[9] Dec. at 5.

[10] *Id*.

[11] Dec. at 5, n.10.

[12] *Id*.

[13] Dec. at 4, 5.

[14] *Id*. at 5-6.

[15] *Id*. at 6.

4

Agreement terminating on February 14.[16]  When Tenants did vacate, the total back rent owed was $5,625, comprised of the monthly rate of $2,250 plus the additional 45 days Tenants resided at the Property beyond the expiration of the Lease Agreement at a prorated rate of $75 per day.[17]

## A. The JP Court Action

Both parties initiated separate suits in the Justice of the Peace Court (the "JP Court") relating to their dispute[18] that the JP Court consolidated.[19]  Tenants sought $25,000 "for double their security deposit, tenant repairs, loss of personal belongings, reimbursement of meals, and rent abatement for conditions of the rental unit."[20]  Tenants contended that, under 25 *Del. C.* § 5514(b),[21] they were entitled to double their deposit because Landlord did not deposit their security deposit into an escrow account and instead used the funds to pay the mortgage on the property.[22]

---

[16] Dec. at 6.

[17] *Id.*

[18] *Douglas Milbourne v. Derrick J Swinton*, JP13-21-000714 (Feb. 11, 2021); *Derrick Swinton v. Douglas Milbourne and Orquida Milbourne*, JP13-21-000770 (Feb. 16, 2021).

[19] Dec. at n.2; JP13-21-000714.

[20] Justice of the Peace Court No. 13, October 12, 2021, Notice of Judgment ["JP Judgment"].

[21] 25 *Del. C.* § 5514(b) states in pertinent part: "Each security deposit shall be placed by the landlord in an escrow bank account in a federally insured banking institution with an office that accepts deposits within the State. Such account shall be designated as a security deposit account and shall not be used in the operation of any business by the landlord."

[22] JP Judgment.

Landlord filed a counterclaim "seeking rent, late fees, holdover rent, floor repair, and damages totaling $12,167.50."[23]

Trial was held in the JP Court on October 5, 2021.[24] Tenants and Landlord submitted in evidence, the Lease Agreement, flooring invoice, plumbing receipts, various photographs of the property before, during and after tenancy, and repair estimates and receipts.[25] The JP Court found for Landlord on his counterclaim for the unpaid rent from January 15, 2021 to March 30, 2021 in the amount of $5,625 and the cost to refinish the floors for $1,610.[26] The JP Court further found that Tenants were not owed double their security deposit because Landlord "substantially complied with the requirements of [§ 5514(b)]" and because Landlord "timely disclose[d] the location of the security deposit account and it was in a federally-insured financial institution."[27] But, per the Lease Agreement, Tenants were owed their security deposit back in the amount of $2,250.[28]

---

[23] JP Judgment.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

**B. The Court of Common Pleas Appeal**

The parties appealed the JP Court's decision to the Court of Common Pleas ("CCP").[29] Appeals from JP Court to CCP proceed to trial de novo.[30] In advance of trial, Landlord filed a motion for default judgment against Tenant Orquida Milbourne that was granted by bench order on May 23, 2024, with damages to be determined at trial.[31] Tenants then filed the Motion to Prohibit Counterclaim requesting Landlord be prohibited from filing or offering testimony at trial in support of a counterclaim.[32]

Trial was held in CCP on September 30, 2024,[33] during which the lower court considered:

> (i) Landlord's claim against Tenant[s] for failure to pay rent in the amount of $5,625; (ii) Landlord's breach of contract claim against Tenant[s] regarding the hardwood floors in the amount of $1,610; (iii) Tenants' claim against Landlord for double their security deposit, totaling $4,500; (iv) Tenants' kitchen cleanup claim against Landlord for $6,000; and (v) damages as to [Tenants].[34]

---

[29] Dec. at 3.

[30] 10 *Del. C.* § 9571(c); Ct. Com. Pl. Civ. R. 72.3.

[31] Dec. at 2, n.1.

[32] Opening Brief of Appellant, D.I. 13, ["Tenant OB"], Ex. A.

[33] Dec. at 2.

[34] Dec. at 3.

7

Landlord and Tenants were the only witnesses who testified at trial.[35]  The CCP found in favor of Landlord as to the claim of unpaid rent.[36]  The CCP also found in favor of Landlord for the cost to refinish the hardwood floors, determining it was a condition of the Lease Agreement that Tenants were to resurface and stain the floors that was breached when they failed to do so.[37]  Accordingly, the CCP held Landlord was entitled to $1,610, the cost to refinish the floors, plus the unpaid rent of $5,625.[38]

At trial, Landlord admitted to depositing Tenants' security deposit into his personal bank account and not holding it in escrow.[39]  Thus, the CCP found Landlord violated 25 *Del. C.* § 5514(b).  Notwithstanding this finding, "however, § 5514(g)(1-2) provides double the security deposit as a penalty *only* when the landlord fails to remit the deposit within 20 days from the expiration of the agreement; or when landlord fails to disclose the location of the deposit within 20 days of a written request."[40]  Accordingly, the CCP determined that although Landlord violated §

---

[35] Dec. at 3.

[36] *Id*. at 8.

[37] *Id*.

[38] *Id*.

[39] *Id*. at 9. Interrogatories introduced by Tenants at trial "show[ed] that Landlord admit[ted] to using the security deposit to pay the mortgage on the property."

[40] *Id*. (emphasis added).

5514(b), there were no prescribed penalties under § 5514(g)(2) for the alleged violations, and Tenants did not establish their entitlement to double their deposit.[41]

As for Tenants' claim that they were owed $6,000 for kitchen cleanup after the sink overflows—two cleanups at a rate of $3,000 each—the CCP found there was inadequate evidence presented at trial to support such a finding because "the value of the water cleanup c[ould not] be determined with reasonable certainty."[42]

Based on its legal and factual findings, the CCP entered judgment in favor of Landlord and against Tenants in the amount of $7,235 minus the $2,250 security deposit owed to Tenants.[43] Default judgment was also entered against Tenant Orquidea Milbourne because "the Court [wa]s satisfied that Landlord proved, by a preponderance of the evidence, that he suffered damages [attributable to Tenants]."[44]

---

[41] Dec. at 10.

[42] *Id.* at 11. At trial, Tenants submitted a computer screenshot showing a QuickBooks entry, created by Tenants, listing tasks and services with costs for each "Odor Enhancement Deep Steam cleaning gun the gray out of Kitchen & Basement 10 Hr AT $150.00 & High Quality disinfected Spray Gun at $150.00 a Hr November $3000 & January $3000 11 Welwyn rd Newark de 19711."

[43] *Id.*

[44] *Id.*

## C. The Parties' Contentions on Appeal

On appeal, Tenants argue: (1) the "[the CCP] erred for its failure to prohibit [Landlord] from pursuing a Counterclaim;"[45] and (2) "the [CCP] erred as a matter of law by failing to award [Tenants] double their security deposit."[46]

Landlord responds that Tenants never filed, nor were they prohibited from filing, a motion to prohibit his counterclaim during the CCP trial, and "there is no documentation or ruling on record to indicate that the [court] either reviewed or denied said motion at any point during the proceeding."[47] Landlord also highlights (1) Tenant Orquidea Milbourne's signature is missing from Tenants' opening brief and that "[t]his may be procedurally significant, as the brief does not reflect the joint position of both named appellants"[48] and (2) the CCP entered default judgment against Tenant Orquidea Milbourne "following her nonappearance and failure to participate in the proceedings," however, "[she] was present at trial[,] participated in the proceedings . . . and was permitted to present testimony as a witness in support of the [Tenants'] case."[49]

---

[45] Tenant OB at 1.

[46] *Id*. at 2.

[47] Answering Brief of Appellee, D.I. 18, ["Landlord AB"] at 2.

[48] Landlord AB at 1. It should be noted that Tenants filed an amended Opening Brief which included both of the Tenants' signatures. D.I. 20.

[49] Landlord AB at 3.

## III. STANDARD OF REVIEW

Under 10 *Del. C.* § 1326, parties may appeal final judgments from the Court of Common Pleas to the Superior Court on the record.[50] The Superior Court's appellate standard of review mirrors that of the Supreme Court—it examines whether the lower court's ruling is free of legal error and supported by the evidence.[51] Factual findings are upheld if they are backed by sufficient evidence and result from a logical and orderly deductive process.[52] Legal conclusions are reviewed *de novo* for errors in the formulation or application of legal precepts.[53]

---

[50] 10 *Del. C.* § 1326(c); *see Anderson v. R.A. Midway Towing*, 905 A.2d 746, 746 (Del. 2006) (TABLE) (finding the Superior Court did not have jurisdiction to dismiss an appeal from the Court of Common Pleas which had not yet entered a final judgment in the matter).

[51] *Baker v. Connell*, 488 A.2d 1303, 1309 (Del. 1985); *Auto Equity Loans of Del., LLC v. Baird*, 2021 WL 2346132, at *2 (Del. Super. June 8, 2021) (quoting *Clifford Romain v. State Farm Mut. Auto. Ins. Co.*, 1999 WL 1427801, at *2 (Del. Super. Dec. 2, 1999) ("This Court's function when addressing an appeal from the Court of Common Pleas is like that of the Delaware Supreme Court. The Superior Court limits its review to correcting errors of law and determining whether the trial judge's factual findings 'are adequately supported by the record and are the product of [an] orderly and logical deductive process.' Legal conclusions of the trial judge are reviewed [de novo].")); *Fowler v. Pratcher Krayer, LLC*, 2020 WL 2520273, at *10 (Del. Super. May 18, 2020) (explaining same).

[52] *See Hicklin v. Onyx Acceptance Corp.*, 970 A.2d 244, 248 (Del. 2009) ("Factual findings of the Court of Common Pleas that are supported by the record will be upheld even if, acting independently, the Superior Court would have reached a contrary result."); *Zhang v. Jack Lingo Inc. Realtor*, 2024 WL 3791646, at *1 (Del. Super. Aug. 13, 2024) (citing *Rufus v. Ramsey*, 2004 WL 838612, at *1 (Del. Super. Apr. 13, 2004)) (explaining same); *Adele v. Clifton*, 2022 WL 17494808, at *5 (Del. Super. Dec. 7, 2022) (citing *Coverdale v. Witcher*, 2022 WL 1438772, at *4 (Del. Super. May 4, 2022) (same).

[53] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1285 (Del. 2008).

11

## IV. DISCUSSION

After considering Tenants' arguments raised on appeal, the Court affirms the decision of the Court of Common Pleas because it is correct as a matter of law and supported by substantial evidence.

Tenants' first claim the CCP erred as a matter of law when it failed to prohibit Landlord from pursuing his counterclaim at trial is without merit. Tenant argues "[he] was prejudiced by the [lower court's] allowing [Landlord] to pursue a claim that was never served on [Tenant] and of which [Tenant] had no advance knowledge, and without prior knowledge of the Counterclaim [Tenant] was hampered in preparing and presenting a defense to [Landlord]'s claim."[54] In essence, Tenant argues the CCP should not have considered the counterclaim at all based on lack of notice.

The Court finds Tenants' position is contrary to the facts. Tenant was certainly aware of the counterclaim; it had been decided in the JP Court. Appeals from JP Courts to the CCP are conducted by trial de novo, meaning the case is retried from the beginning.[55] As such, any counterclaims filed with the lower court are reviewed by the trial court as if the case was being heard for the first time.[56] In so doing, the

---

[54] Tenant OB at 1.

[55] 10 *Del. C.* § 9571(c); Ct. Com. Pl. Civ. R. 72.3.

[56] *Wadsley v. Marino Eng'g Co.*, 1990 WL 140093, at *2 (Del. Super., Sept. 14, 1990) ("If this Court is to consider anew the entire case before the Justice of the Peace, the Court is compelled to consider both the direct and counterclaim. Accordingly, a litigant in the Justice of the Peace Court

12

CCP is "compelled to consider both the direct and counterclaim . . . [that is,] a litigant in the Justice of the Peace Court may not appeal only a portion of the lower court's decision when the appeal is for a trial de novo."[57]

Here, the record reflects Landlord filed a counterclaim with the JP Court that was considered and ruled upon. Accordingly, the CCP did not err as a matter of law in considering the counterclaim.[58] The CCP considered the same record that was before the JP Court, as required by law.[59] Having also reviewed that record, this Court further finds there is substantial evidence in the record to support the CCP's factual findings and the award of damages to Landlord.[60] Thus, Tenants' first claim of error, as to the counterclaim, fails.

Tenant's second argument on appeal, that the CCP erred by failing to award Tenants double their security deposit under § 5514(b), is equally unavailing. The CCP found Landlord violated § 5514(b) by holding Tenants' security deposit in a

---

may not appeal only a portion of the lower court's decision when the appeal is for a trial de novo."). *See also Schwalm v. Zachrais Const.*, 2002 WL 596808 (Del. Com. Pl. Feb. 7, 2002).

[57] *Wadsley v. Marino Eng'g Co.*, 1990 WL 140093, at *2 (Del. Super., Sept. 14, 1990); Ct. Com. Pl. Civ. R. 72.3(a) "This rule shall apply to appeals de novo from the Justice of the Peace Court to the Court of Common Pleas."

[58] Tenant OB, Ex. B; Tenant includes Landlord's answer to the CCP notice of appeal, and contends that this is not a counterclaim and should not have been considered as such by the CCP.

[59] Ct. Com. Pl. Civ. R. 72.3(e) "The record on appeal shall constitute the record below as of the time of the filing of the notice of appeal." *See also* 72.3(f) "An appeal to this Court shall join the necessary parties and raise the same issues that were before the Court below."

[60] Landlord's contention that Tenants never filed a Motion to Prohibit Counterclaim prior to the May 2024 trial date and that the CCP never ruled on such a motion if it was filed, is rendered moot for the same reasons as stated above.

personal bank account and using the funds to pay the mortgage on the Property; however, the lower court also determined the penalty for such a violation is not statutorily prescribed.

Upon review, this Court finds the lower court correctly interpreted § 5514(b). This Court agrees the Landlord violated § 5514(b) by holding Tenants' security deposit in a personal bank account and using the funds to pay the mortgage on the Property. This Court also agrees the statute "provides *double* the security deposit *only* when the landlord fails to remit the deposit within 20 days from the expiration of the agreement[] or when landlord fails to disclose the location of the deposit within 20 days."[61] Finally, this Court agrees the statute does not prescribe a penalty for holding the funds in a personal account or using the funds for paying the mortgage. Accordingly, there is no error in CCP's interpretation of the law at issue.

Nor did the CCP err in its application of § 5514(b) to the facts of this case. The CCP concluded, under the standards set forth in § 5514(b), there was not enough evidence in the record to award Tenants double the security deposit: "[b]ased on the evidence presented the [lower court] f[ou]nd that even though the Landlord violated the terms of the Lease and § 5514(b)[,] [T]enants [are] not entitled to a remedy for the violations."[62] When a trial court's ruling is based upon its own factual findings,

---

[61] Dec. at 9 (emphasis added).

[62] *Id*. at 10.

this Court "must determine whether there is sufficient evidence in the record to support those [findings] and determine whether those findings are the result of a logical and orderly deductive process."[63]

Tenants did not allege and there is no evidence in the record to support a finding that Landlord failed to remit the deposit within 20 days from the expiration of the agreement or failed to disclose the location of the deposit within 20 days—the only statutory triggers that would have entitled Tenants to double their security deposit. Instead, substantial evidence in the record showed Landlord held the funds in a personal account and used the funds to pay the mortgage. The statute is silent as to a remedy for this situation, and most certainly does not authorize the award sought by Tenants. It follows that the lower court did not err, or fail to follow a logical and orderly deductive process, by declining to the award Tenants *double* their security deposit.

## CONCLUSION

In sum, the record demonstrates that the Court of Common Pleas did not err as a matter of law on the grounds raised by Tenants on appeal. As a matter of law, the CCP's correctly evaluated Landlord's counterclaim filed in JP Court. And the CCP's holding Tenants were not entitled to double their security deposit in damages under § 5514(b) was the product of an orderly and logical deductive process and

---

[63] *Walker v. State*, 919 A.2d 562 (Del. 2007).

supported by sufficient evidence in the record.  Accordingly, the decision below is

**AFFIRMED**.

      **IT IS SO ORDERED.**

    /s/ *Kathleen M. Vavala*     
The Honorable Kathleen M. Vavala

Original to Prothonotary

cc:    Appellants
       Appellee